[Civ. No. 66300. Second Dist., Div. Four. Oct. 12, 1982.]

WILBUR F. LITTLEFIELD, as Public Defender, etc., et al.,
Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE et al., Real Parties in Interest.

## COUNSEL

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Alan H. Simon and Albert J. Menaster, Deputy Public Defenders, for Petitioners.

No appearance for Respondent.

Gerald L. Chaleff, Katherine Mader and Edward J. Horowitz for Real Parties in Interest.

## OPINION

**KINGSLEY, J.**—By petition for mandate filed in this court September 3, 1982, petitioners seek to vacate the trial court's rulings of August 23 and 24, 1982, which overrule petitioner Bianchi's claim of attorney/client privilege and clergyman/penitent privilege. The challenged orders require prosecution witness Bianchi to testify on cross-examination as to the content of confidential conversations between him and his defense counsel, petitioner Los Angeles County Public Defender, concerning the "Hillside Strangler" murders and compel the public defender to disclose to defendant Buono's defense counsel, pursuant to subpoena duces tecum, all notes and materials in the possession of the public defender concerning those conversations. Buono asserts the need to inquire into these conversations to discover whether Bianchi was given critical information by his defense counsel in 1979 that enabled him to appear to have been a percipient witness to Buono's commission of the murders. Buono contends he must be allowed this information to impeach Bianchi by showing Bianchi obtained critical facts secondhand from his defense counsel.

In the underlying proceeding, Angelo Buono is charged with a series of murders. The number and circumstances of the charged offenses is such that it is probable that, if convicted, Buono will be sentenced to the death penalty. The trial is now in process. The principal witness against Buono is Kenneth A. Bianchi, one of the petitioners here. Originally, Bianchi was jointly charged with Buono and he has been convicted of similar offenses in the State of Washington. Bianchi entered into plea bargains under which he

pled guilty to the murder in the first degree in exchange for his testimony in this case. It is the theory of the defense in this case that Bianchi's testimony is false, given only to secure the plea bargain by which he escapes the risk of capital punishment. In support of that theory, the defense desires to cross-examine Bianchi about his conversations with the public defender's office leading to the bargain and to subpoena from the public defender, the other petitioner here, all notes and records of the conversations between Bianchi and that office. The defense also seeks to examine as to the content of a confession allegedly made by Bianchi to a clergyman in Washington. The trial court has issued orders, herein attacked, permitting such cross-examination and validating the subpoena. We annul the orders herein under attack concerning the attorney/client privilege and the subpoena.

■ Prima facie, the orders are in violation of the attorney/client and the clergy/penitent privileges set forth in sections 950-954, and 1030-1033 of the Evidence Code. The contention herein urged on us is that the evidence sought would show that the public defender, then representing Bianchi, had disclosed to Bianchi facts about the alleged murders, thus enabling him to fabricate testimony against Buono. Assuming that the evidence would show that the public defender had done so, in counseling Bianchi about the wisdom of the plea bargain (a fact that Buono's counsel can only surmise), we see nothing to permit a violation of the traditional attorney-client privilege. In any case, where attorney and client discuss a plea bargain, the strengths and weaknesses of the prosecution's case will necessarily be considered and the attorney will warn the client of the risk of conviction that he faces. The discussion may also advise the client that the prosecution has *evidence* of material facts where the client thought such *evidence* was not available to the prosecution. The wild surmise herein urged on us suggests nothing more than a normal attorney/client discussion leading to professional advice. Buono is not entitled to invade the statutory privilege surrounding such discussions.

I

■ Buono here seeks to invade the attorney/client privilege on two theories: (1) that that privilege may be deemed attenuated because the attorney/client relationship is ''near an end'' and thus may be balanced against the need of a defendant facing the death penalty to discover what facts concerning the murders the witness actually knew firsthand; and (2) that prior testimony by the witness Bianchi as to some of the topics of his confidential discussions with the public defender constitutes a waiver of the privilege. We reject both theories.

(1) As we have said above, Bianchi has pled guilty to first degree murders as to five of the offenses also charged against Buono and to similar murders in Washington. It still remains to be determined whether he will serve the resultant life term in California, or in Washington. There is a suggestion in the briefs that Bianchi would prefer a California commitment. It is thus clear that the privilege remains important to Bianchi.

More significant, unlike the privileges against self-incrimination, the attorney/client privilege continues even after the end of threat of punishment. The purpose of the attorney/client privilege is to preserve the confidentiality of information. (*City & County of San Francisco* v. *Superior Court* (1951) 37 Cal.2d 227, 233 [231 P.2d 26, 25 A.L.R.2d 1418].) Section 954 of the Evidence Code provides that ''. . . the client, whether or not a party, has the privilege to refuse to disclose, . . . a confidential communication between client and lawyer if the privilege is claimed by: (a) The holder of the privilege.'' Section 953 defines ''holder'' as the client or, if the client is deceased, his personal representative. Nothing in the statutes controlling the privilege suggests it is to be limited or diminished in importance as a function of the continuance of the relationship that existed at the time of the confidential communications herein sought.

The relationship between Bianchi and the public defender has not, and never can be, ''attenuated'' in the sense herein urged on us.

■ (2) We turn to consider the ''balancing'' theory which the trial court adopted and which Buono's counsel urges us to affirm.

It is admitted that Bianchi has told at least four different versions of the events, insofar as they involve Buono and that he has admitted that some of those charges were the result of information received by him from his attorneys or the investigators for his attorneys. As we have pointed out above, that does not necessarily suggest that the information so received resulted in any new knowledge by Bianchi of the *facts* involved. A criminal, in confessing, naturally will not disclose anything adverse to him that he thinks he can conceal. Learning that there does exist *evidence* of facts he would rather conceal, then self-interest will lead him to admit the earlier concealed facts. So far as we can determine from the record submitted to us and the argument of counsel before us, Buono seeks to invade the privilege only to bolster his attack on Bianchi's credibility. But that credibility is already open to attack. As pointed out in *People* v. *Flores* (1977) 71 Cal.App.3d 559 [139 Cal.Rptr. 546], the fact that a witness testifies under some grant of whole or partial immunity is itself a

basis for an argument on credibility. Here Bianchi has, in addition, admitted instances of change of story and, in some cases, an in-court admission that earlier testimony was false. We cannot see that Buono needs any invasion of privilege to aid in his jury argument.

Attempts similar to the one herein involved have uniformly been rejected. (*Lohman* v. *Superior Court* (1978) 81 Cal.App.3d 90, 96 [146 Cal.Rptr. 171]; *People* v. *Flores, supra* (1977) 71 Cal.App.3d 559 [139 Cal.Rptr. 546]; *People* v. *Kor* (1954) 129 Cal.App.2d 436, 446 [277 P.2d 94].)

It is here urged that the decision in *People* v. *Meredith* (1981) 29 Cal.3d 682 [175 Cal.Rptr. 612, 631 P.2d 46], overturns all of those earlier decisions. That contention is patently in error. In fact, *Meredith* discusses, at length, and approves, many cases involving the attorney/client privilege, including cases where the attorney had learned of evidence from the client. It carefully limited its decision to the case before it where an attorney, learning where damaging evidence had been concealed by his client, deliberately located that evidence and by removing it from its location prevented police from ascertaining its incriminating location. No such deliberate attempt to suppress evidence is here involved. In fact, counsel for Buono has at all times expressly disclaimed any theory that the public defender or his staff had either ''planted'' a false story in Bianchi's mind or interfered with any investigations by the People.

In short, we know of no, and have been cited to no, authority that would support the exception to the statutory privilege which we are here asked to invent.

■ (3) Alternatively, Buono's counsel here argue that certain testimony by Bianchi amounted to a waiver of the attorney/client privilege. We can see no waiver.

Buono argues that Bianchi is estopped to assert privilege because Bianchi has testified to facts that might have been discussed in confidential conversations between Bianchi and his defense counsel. This is, in substance, simply a restatement of Buono's waiver argument. Like the waiver argument, the estoppel argument contains the same false implied premise: that a client's testimony to facts that were possibly a topic of confidential conversations with his defense counsel is equivalent to the client testifying to the actual content of those attorney/client conversations. This contention was rejected in *De Los Santos* v. *Superior*

*Court* (1980) 27 Cal.3d 677 at pages 685-686 [166 Cal.Rptr. 172, 613 P.2d 233].

The single case from which Buono seeks to derive his estoppel theory, *Estate of Visaxis* (1928) 95 Cal.App. 617 [273 P.165], is manifestly different from the present case in several material respects. First, the person seeking to assert the attorney/client privilege there was a litigant who was not a holder of the privilege. Second, that litigant adduced the testimony of a third party witness as to the actual content of the physician/patient conversations in an effort to invalidate a will on the ground the testator's soundness of mind was affected by syphilis and cancer at the time the will was executed a few weeks before his death. The witness's testimony demonstrated that he had been a friend of the patient and had been told the physician's diagnosis and the precise treatments administered to the patient by both the patient and by the physician. The treatments the witness was told about, apparently being present when they occurred, were found by the *Visaxis* court to be commonly known syphilis treatment of that era. Thus, *Visaxis* held that when the litigant who adduced this testimony seeks to assert the physician-patient privilege to prevent the physician from testifing that the syphilis had not affected the testator's mind when the will was executed, that litigant was estopped to do so because he had himself introduced evidence of the content of the conversations. Although the *Visaxis* court stated that the case before it was not one of waiver by the deceased patient, because that issue had not been raised at the trial level or on appeal, it is evident from the testimony described in that opinion that the privilege had in fact been waived by disclosure of the critical content of the conversation to the nonprivileged third party by both the patient and the physician. It is clear that *Visaxis* is not a case, such as the present, where significant parts of the actual content of confidential communications have not been disclosed.

It is conceded that the privilege is not waived by the mere disclosure that a witness has talked to his attorney about his case. (See *De Los Santos* v. *Superior Court, supra,* 27 Cal.3d 677, and *People* v. *Kor, supra,* 129 Cal.App.2d 436, 444.) Apart from admitting that communications with the attorney had included (as we have above pointed out they necessarily did) discussions as to the facts and evidence in the case, we are pointed to only three bits of testimony that Buono contends were waivers. In two of those instances, Bianchi admitted that the attorney, or the investigators for the attorney, had told him of alleged details of one of the crimes, or of alleged evidence. In both instances, the response clearly indicated that Bianchi was already aware of the episodes involved—in one case he said he knew of the evidence but not from the source the communication suggested; in the other

instance he promptly replied that the alleged detail was inaccurate since he knew what actually had taken place. In the third instance, under compulsion from the magistrate at the preliminary hearing, he admitted that a ring shown to him was in fact that of one young victim. There is no suggestion that he did not already know about the ring, but only that, until it appeared in the hands of the prosecution, he had not volunteered to testify about it.

## II

Petitioner public defender also argued in the trial court, and here, that the subpoena served on him is vague and too broad. Since we hold, as above discussed, that the subpoena is improper and invades the attorney/client privilege, we need not, and do not, consider the arguments made in that contention.

## III

In Washington, Bianchi is said to have discussed his part in the Washington crimes with a priest and recorded the details of that discussion in a diary. It is here claimed that his Washington counsel, with his consent, disclosed parts of that diary to the prosecution and to the press. The trial court found a waiver. On the record before it, and us, we cannot say that the ruling was in error. (*Klang* v. *Shell Oil Co.* (1971) 17 Cal.App.3d 933, 938 [95 Cal.Rptr. 265].)

However, we can see in the extracts sought to be revealed here, nothing more than Bianchi's excuse and explanation for his involvment in the murders based on psychological problems with his mother. Since Bianchi has already admitted his part in the murders we have doubts as to the relevancy of that evidence in this case, although it may have played a part in his securing a reduction in the degree of his crimes. If, at trial, the evidence is offered, the trial court is directed to consider carefully the materiality and relevancy of the diary entries involved.

Let a peremptory writ issue, limited to: (1) Directing the trial court to vacate its orders of August 23d and 24th herein involved, insofar as they relate to the attorney/client privilege considered in this opinion; (2) prohibiting the trial court from permitting any examination of petitioner Bianchi or of the public defender or his staff, concerning any communication between Bianchi and the public defender or his investigators; and (3) directing the trial court to quash the subpoena herein involved. The stay

order heretofore imposed by this court shall remain in effect until the finality of this proceeding.

Woods, P. J., and Amerian, J., concurred.

The petition of real party in interest Buono for a hearing by the Supreme Court was denied December 9, 1982. Newman, J., did not participate therein.