Filed 12/29/16

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| LOS ANGELES COUNTY BOARD OF SUPERVISORS et al., | ) ) ) | |
| Petitioners, | ) ) ) | S226645 |
| v. | ) ) | Ct.App. 2/3 B257230 |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | ) ) ) | |
| Respondent; | ) ) | Los Angeles County Super. Ct. No. BS145753 |
| ACLU OF SOUTHERN CALIFORNIA et al., | ) ) ) ) | |
| Real Parties in Interest. | ) ) | |
| _____ | ) | |

       This case implicates both the public's interest in transparency and a public agency's interest in confidential communications with its legal counsel. The specific question we must resolve is whether invoices for work on currently pending litigation sent to the County of Los Angeles by an outside law firm are within the scope of the attorney-client privilege, and therefore exempt from disclosure under the California Public Records Act (PRA; Gov. Code, § 6250 et seq.). What we hold is that the attorney-client privilege does not categorically shield everything in a billing invoice from PRA disclosure. But invoices for work in pending and active legal matters are so closely related to attorney-client communications that they implicate the heartland of the privilege. The privilege

SEE DISSENTING OPINION.

therefore protects the confidentiality of invoices for work in pending and active legal matters.

## I. BACKGROUND

On July 1, 2013, following several publicized inquiries into allegations of excessive force against inmates housed in the Los Angeles County jail system, the ACLU of Southern California and Eric Preven (collectively, the ACLU) submitted a PRA request to the Los Angeles County Board of Supervisors and the Office of the Los Angeles County Counsel (collectively, the County). The request sought "invoices" specifying the amounts that the County had been billed by any law firm in connection with nine different lawsuits alleging excessive force against jail inmates.

In a letter dated July 26, 2013, the County agreed to produce copies of the requested invoices related to three such lawsuits that were no longer pending, with attorney-client privileged and work product information redacted. The County declined to provide invoices for the remaining six lawsuits, which were still pending. According to the County, "the detailed description, timing, and amount of attorney work performed, which communicates to the client and discloses attorney strategy, tactics, thought processes and analysis" were privileged under the Evidence Code and therefore exempt from disclosure under Government Code section 6254, subdivision (k) (all undesignated cites hereafter are to the Government Code). The requested invoices, the County continued, were also exempt under the PRA's catchall provision, section 6255, subdivision (a), "because the public interest served by not disclosing the records at this time clearly outweighs the public interest served by disclosure of the records."

On October 31, 2013, the ACLU filed a petition for writ of mandate in the superior court, seeking to compel the County to "comply with the [PRA]" and disclose the requested records for all nine lawsuits. The ACLU framed its request

2

for the invoices as follows: "Current and former jail inmates have brought numerous lawsuits against the County and others for alleged excessive force. The County has retained a number of law firms to defend against these suits. It is believed that the selected law firms may have engaged in 'scorched earth' litigation tactics and dragged out cases even when a settlement was in the best interest of the County or when a settlement was likely. Given the issues raised by the allegations in these complaints and the use of taxpayer dollars to pay for the alleged use of scorched earth litigation tactics, the public has a right and interest in ensuring the transparent and efficient use of taxpayer money." Defending such lawsuits, the plaintiffs estimated, could cost tens of millions of dollars. After a hearing on June 5, 2014, the court granted the ACLU's petition. The court held that the County had failed to show the invoices were attorney-client privileged communications. As a result, the court ordered the County to release "the billing statements for the nine lawsuits identified in the July 1, 2013 []PRA request." But "[t]o the extent these documents reflect an attorney's legal opinion or advice, or reveal an attorney's mental impressions or theories of the case," the court held that "such limited information may be redacted."

The County then filed its own petition for writ of mandate in the Court of Appeal, which granted the County's petition and vacated the superior court's order. The Court of Appeal found that "the invoices are confidential communications within the meaning of Evidence Code section 952," and therefore "are exempt from disclosure under Government Code section 6254, subdivision (k)." Relying on our decision in *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725 (*Costco*), the appellate court concluded that "the proper focus in the privilege inquiry is not whether the communication contains an attorney's opinion or advice, but whether the relationship is one of attorney-client and whether the communication was confidentially transmitted in the course of that

3

relationship." And " 'because the privilege protects a *transmission* irrespective of its content,' " the Court of Appeal held that "the invoices" — which "constituted information transmitted by the law firms to the County in the course of the representation" and in confidence — were confidential communications within the meaning of Evidence Code section 952. Given this conclusion, the Court of Appeal did not reach the parties' contentions regarding application of the PRA's catchall provision or Business and Professions Code sections 6148 and 6149. We then granted review.

## II. DISCUSSION

The primary question raised in this case is whether invoices for legal services transmitted to a government agency by outside counsel are categorically protected by the attorney-client privilege and therefore exempt from disclosure under the PRA, and if not, whether any of the information sought by the ACLU is nonetheless covered by the privilege.

### A. Statutory Scheme

#### 1. PRA

The PRA and the California Constitution provide the public with a broad right of access to government information. (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 164.) The PRA, enacted in 1968, grants access to public records held by state and local agencies. (§ 6250 et seq.) Modeled after the federal Freedom of Information Act (5 U.S.C. § 552 et seq.), the PRA was enacted for the purpose of increasing freedom of information by giving members of the public access to records in the possession of state and local agencies. (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 425.) Such "access to information concerning the conduct of the people's business," the Legislature declared, "is a fundamental and necessary right of every person in this state." (§ 6250.)

4

Consistent with the Legislature's purpose, the PRA broadly defines "public records" to include "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." (§ 6252, subd. (e).)

As the result of a 2004 initiative, Proposition 59, voters enshrined the PRA's right of access to information in the state Constitution: "The people have the right of access to information concerning the conduct of the people's business, and, therefore, . . . the writings of public officials and agencies shall be open to public scrutiny." (Cal. Const., art. I, § 3, subd. (b)(1).) As amended by the initiative, the Constitution also directs that statutes "shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access." (Cal. Const., art. I, § 3, subd. (b)(2).)

Despite the value assigned to robust public disclosure of government records both in the California Constitution and in the PRA, two statutory exceptions nonetheless exist. The first is section 6255(a), the PRA's catchall provision allowing a government agency to withhold a public record if it can demonstrate that "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." In determining the propriety of an agency's reliance on the catchall provision to withhold public records, the burden of proof is on the agency "to demonstrate a clear overbalance" in favor of nondisclosure. (*Michaelis, Montanari & Johnson v. Superior Court* (2006) 38 Cal.4th 1065, 1071.) The second is section 6254, which lists certain categories of records exempt from PRA disclosure. These exemptions are largely concerned with protecting " 'the privacy

5

of persons whose data or documents come into governmental possession.' "
(*Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1282.)[1]

Section 6254(k) is the PRA exemption at issue in this case. This provision allows agencies to withhold "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." (§ 6254(k).)[2] By "its reference to the privileges contained in the Evidence Code," section 6254(k) "has made the attorney-client privilege applicable to public records." (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 370 (*Roberts*).) This exemption, we have explained, emphasizes the Legislature's purpose of affording "public entities the attorney-client privilege as to writings to the extent authorized by the Evidence Code." (*Id.* at p. 380, footnote omitted.)

As with any of the PRA's statutory exemptions, "the fact that parts of a requested document fall within the terms of an exemption does not justify withholding the entire document." (*CBS, Inc. v. Block*, *supra*, 42 Cal.3d at p. 653.) What the PRA appears to offer is a ready solution for records blending exempt and nonexempt information: "Any reasonably segregable portion of a

---

[1]    The 2004 voter initiative preserved these exemptions. (See Cal. Const., art. I, § 3, subd. (b)(5); see also *International Federation of Professional and Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 329, fn. 2.)

[2]    As first enacted in 1968, section 6254(k) read: "Records the disclosure of which is exempted or prohibited pursuant to provisions of federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." (§ 6254(k), as enacted by Stats. 1968, ch. 1473, § 39, p. 2947.) In 1981, the Legislature used identical language when repealing and reenacting section 6254(k). (Stats. 1981, ch. 684, §§ 1, 1.5, pp. 2484-2491.) The Legislature has since amended this subdivision only once, deleting the first use of the phrase "provisions of" in 1991. (Stats. 1991, ch. 607, § 4, p. 2758.)

record shall be available for inspection by any person requesting the record after deletion of the portions that are exempted by law." (§ 6253, subd. (a).) While this provision does not dictate which parts of a public record are privileged, it requires public agencies to use the equivalent of a surgical scalpel to separate those portions of a record subject to disclosure from privileged portions. At the same time, the statute places an express limit on this surgical approach: public agencies are not required to attempt selective disclosure of records that are not "reasonably segregable." (*Ibid.*) To the extent this standard is ambiguous, the PRA must be construed in " 'whichever way will further the people's right of access.' " (*Ardon v. City of Los Angeles* (2016) 62 Cal.4th 1176, 1190; see also Cal. Const., art. I, § 3, subd. (b)(2).)

### 2. *Evidence Code*

The attorney-client privilege incorporated into the PRA by section 6254(k) is described in Evidence Code section 950 et seq., enacted in 1965. (See Evid. Code, div. 8, ch.4, art. 3 ["Lawyer-client Privilege"].) This privilege no doubt holds a special place in the law of our state. (See *Mitchell v. Superior Court* (1984) 37 Cal.3d 591, 599 (*Mitchell*) ["The attorney-client privilege has been a hallmark of Anglo-American jurisprudence for almost 400 years."].) And for good reason: its "fundamental purpose . . . is to safeguard the confidential relationship between clients and their attorneys so as to promote full and frank discussion of the facts and tactics surrounding individual legal matters." (*Ibid.* ["the public policy fostered by the privilege seeks to insure 'the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense' "].)

7

To this end, Evidence Code section 954 confers a privilege on the client "to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer." A "confidential communication," moreover, is defined as "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." (Evid. Code, § 952.)

## B. Application to County's Invoices for Legal Services

As with all questions of statutory interpretation, our foremost task is to give effect to the Legislature's purpose. (See *Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1037.) In doing so, we analyze the statute's text in its relevant context, as text so read tends to be the clearest, most cogent indicator of a specific provision's purpose in the larger statutory scheme. We interpret relevant terms in light of their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme to determine what interpretation best advances the Legislature's underlying purpose. (See *Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 378.)

Not surprisingly, the primary purpose of the Evidence Code provisions at issue in this case is to protect the confidential relationship between client and attorney to promote frank discussion between the two. (See *Mitchell*, *supra*, 37 Cal.3d at p. 599.) These provisions do so by prohibiting disclosure of any

8

"confidential communication between client and lawyer." (Evid. Code, § 954.) The Evidence Code also states that " 'confidential communication between client and lawyer' means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence . . . , and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." (*Id.*, § 952; see also *Costco*, *supra*, 47 Cal.4th at p. 733 ["the privilege attaches to any legal advice given in the course of an attorney-client relationship"].) The key question, then, is this: Would treating invoices as sometimes nonprivileged undermine the fundamental purpose of the attorney-client privilege?

The ACLU says no. Merely sending invoices to a client, the ACLU contends, does not always "further the purpose of legal representation." Rather, invoices are meant to help a service provider secure payment for services rendered. The mere fact that an attorney chose to transmit his or her invoices in confidence is of no moment, according to the ACLU. Such invoices further a separate business purpose that is merely incidental to the attorney-client relationship. We agree — but only up to a point. The attorney-client privilege only protects communications between attorney and client made for the purpose of seeking or delivering the attorney's legal advice or representation. Evidence Code section 952 twice states that the privilege extends only to those communications made "in the course of [the attorney-client] relationship," a construction suggesting a nexus between the communication and the attorney's professional role.[3] The Evidence Code also repeatedly refers to "consultation" between the attorney and client. (See *id.*, § 951 [defining a "client" as someone who "consults

---

[3] The phrase "in the course of that relationship" has appeared unchanged in Evidence Code section 952 since its enactment in 1965.

a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity"]; *id.*, § 952 [defining "confidential communication between client and lawyer" as "information transmitted in confidence by a means which . . . discloses to no third persons other than those who are present to further the interest of the client in the consultation or to those to whom disclosure is reasonably necessary for . . . the accomplishment of the purpose for which the lawyer is consulted"].)

These references underscore that the privilege does not apply to every single communication transmitted confidentially between lawyer and client. Rather, the heartland of the privilege protects those communications that bear some relationship to the attorney's provision of legal consultation. (See *Roberts*, *supra*, 5 Cal.4th at p. 371 [explaining that "under the Evidence Code, the attorney-client privilege applies to confidential communications *within the scope of* the attorney-client relationship" (italics added)]; see also *Costco*, *supra*, 47 Cal.4th at p. 743 (conc. opn. of George, C. J.) [Evid. Code § 952 "identifies a ' "confidential communication" ' in general terms as meaning 'information transmitted between a client and his or her lawyer in the course of that relationship,' but the provision also supplies more specific examples of what is meant by adding that a confidential communication 'includes a legal opinion formed and the advice given by the lawyer in the course of that relationship' " (italics omitted)].)

Justice Werdegar's dissenting opinion suggests that the Evidence Code's definition of the attorney-client privilege forecloses any inquiry into whether a communication is related to legal consultation. Yet the Evidence Code's definition of the privilege concerns not only the manner in which information is transmitted, but the nature of the communication. The statute treats the term "confidential communication between client and lawyer" as one that requires further definition, and the definition it provides extends only to that information

10

transmitted "*in the course of* [the attorney-client] relationship." (Evid. Code, § 952, italics added.) The same definition also refers to "those who are present to *further the interest of the client in the consultation*" and "the *accomplishment of the purpose* for which the lawyer is consulted. (*Ibid.*, italics added.) A similar focus is plain in related definitions of the Evidence Code. For example, the statute defines "client" as someone who "consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity." (*Id.*, § 951.) And a "confidential communication between client and lawyer," according to the statute, "includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." (*Id.*, § 952.) These references cut against an understanding of the privilege in this context as encompassing every conceivable communication a client and attorney share, and instead link the privilege to communications that bear some relationship to the provision of legal consultation.

Invoices for legal services are generally not communicated for the purpose of legal consultation. Rather, they are communicated for the purpose of billing the client and, to the extent they have no other purpose or effect, they fall outside the scope of an attorney's professional representation. (See *County of Los Angeles v. Superior Court* (2012) 211 Cal.App.4th 57, 67 [explaining that "the dominant purpose for preparing the [invoices to the county] was not for use in litigation but as part of normal record keeping and to facilitate the payment of attorney fees on a regular basis"]; cf. *Montebello Rose Co. v. Agricultural Labor Relations Bd.* (1981) 119 Cal.App.3d 1, 32 [labor negotiations, which could have been conducted by a nonattorney, "were not privileged unless the dominant purpose of the particular communication was to secure or render legal service or advice"].) While invoices may convey some very general information about the process through which a client obtains legal advice, their purpose is to ensure proper

11

payment for services rendered, not to seek or deliver the attorney's legal advice or representation.

This distinction is relevant because, as our opinion in *Costco* confirmed, not every communication between attorney and client is privileged solely because it is confidentially transmitted. Costco had retained a law firm to advise it on whether certain managers were exempt from wage and overtime laws. An attorney at the firm interviewed two Costco managers and then sent the company a confidential 22-page opinion letter. Several years later, some Costco employees filed a lawsuit claiming that Costco had misclassified and underpaid its managers. As part of that litigation, the plaintiffs tried to compel discovery of the attorney's opinion letter. Over Costco's objection, the trial court ordered disclosure of the letter, allowing portions of it containing the attorney's impressions, observations, and opinions to be redacted. (*Costco*, *supra*, 47 Cal.4th at pp. 730-731.) The confidential opinion letter at issue in *Costco* was indisputably privileged, and the plaintiffs never claimed otherwise. (See *id.* at pp. 735-736 [the plaintiffs "never disputed" that Costco retained the law firm to provide Costco with "legal advice," which was provided in the form of the opinion letter].)

In ruling that Costco did not need to turn over this opinion letter, we took care to explain that the same rule would not apply to all communications between a lawyer and his or her client. The privilege, for example, "is not applicable when the attorney acts merely as a negotiator for the client or is providing business advice [citation]; in that case, the relationship between the parties to the communication is not one of attorney-client." (*Costco*, *supra*, 47 Cal.4th at p. 735.) The same is true when a lawyer is billing his or her client: the relationship evokes an arm's-length transaction between parties in the market for professional services more than it does the diligent but discreet conveyance of facts and advice that epitomizes the bond between lawyer and client. An

12

organization may strongly oppose, and sternly resist, public disclosure of its legal bills, just as a business adviser or public relations consultant might do the same. But the extent of this resistance does not dictate the scope of the attorney-client privilege.

What *Costco* also reaffirmed is the longstanding principle that "a client cannot protect unprivileged information from discovery by transmitting it to an attorney," though we noted that this "concern [was] not present here." (*Costco*, *supra*, 47 Cal.4th at p. 735; see also *Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 397 [" 'Knowledge which is not otherwise privileged does not become so merely by being communicated to an attorney.' "].) *Costco* thus recognized that not all communications between attorney and client become privileged solely by virtue of the mode of communication (confidential versus not). And though *Costco* made this point with regard to information sent from client to attorney, we see no reason why the reverse situation would require a different rule. After all, a lawyer may well send a government client an e-mail that has nothing to do with legal advice. For example, a lawyer might e-mail details about a firm's efforts to move to a newly constructed office building or host a political fundraiser. Even if these communications are confidential (as would be true for any e-mail communication), they are not made for the purpose of legal consultation and are therefore not protected by the attorney-client privilege.

The same is true for billing invoices. While a client's fees have some ancillary relationship to legal consultation, an invoice listing amounts of fees is not communicated for the purpose of legal consultation. The mere fact that an attorney transmitted a communication to his or her client confidentially (in the sense that no one other than the recipient could see the communication) does not end the inquiry into whether the communication's contents are protected by the attorney-client privilege. After all, just about every communication between a

13

lawyer and client is intended to be kept private, regardless of whether the communication has any connection to legal consultation at all. Even the fact that the information communicated may have some ancillary bearing on an attorney's relationship to a client (as information about an office move or political fundraiser might have) does not end our inquiry into whether the attorney-client privilege applies. Nor does the fact that an attorney would prefer to keep the information confidential (as most people would prefer for their emails).

What the inquiry turns on instead is the link between the content of the communication and the types of communication that the attorney-client privilege was designed to keep confidential. In order for a communication to be privileged, it must be made for the purpose of the legal consultation, rather than some unrelated or ancillary purpose. As Chief Justice George put it in his concurring opinion in *Costco*: "the communication also must occur 'in the course of' the attorney-client relationship (Evid. Code, § 952) — that is, the communication must have been made for the purpose of the legal representation." (*Costco*, *supra*, 47 Cal.4th at p. 742 (conc. opn. of George, C. J.).) Considering Evidence Code section 952 "as a whole," continued Chief Justice George, it becomes "even clearer that the Legislature intended to extend the protection of the privilege solely to those communications between the lawyer and the client that are made for the purpose of seeking or delivering the lawyer's legal advice or representation." (*Costco*, 47 Cal.4th at p. 743 (conc. opn. of George, C. J.).) While Chief Justice George's views are expressed in a concurring opinion, the opinion emphasizes a crucial distinction that is relevant here, between the opinion letter at issue in that case and the invoices at issue here. Unlike an opinion letter, a billing invoice is not "made for the purpose of the legal representation." (*Id.* at p. 742.)

But while billing invoices are generally not "made for the purpose of legal representation," the information contained within certain invoices may be within

14

the scope of the privilege. To the extent that billing information is conveyed "for the purpose of legal representation" — perhaps to inform the client of the nature or amount of work occurring in connection with a pending legal issue — such information lies in the heartland of the attorney-client privilege. And even if the information is more general, such as aggregate figures describing the total amount spent on continuing litigation during a given quarter or year, it may come close enough to this heartland to threaten the confidentiality of information directly relevant to the attorney's distinctive professional role. The attorney-client privilege protects the confidentiality of information in both those categories, even if the information happens to be transmitted in a document that is not itself categorically privileged. When a legal matter remains pending and active, the privilege encompasses everything in an invoice, including the amount of aggregate fees. This is because, even though the amount of money paid for legal services is generally not privileged, an invoice that shows a sudden uptick in spending "might very well reveal much of [a government agency]'s investigative efforts and trial strategy." (*Mitchell*, *supra*, 37 Cal.3d at p. 610.) Midlitigation swings in spending, for example, could reveal an impending filing or outsized concern about a recent event.

The same may not be true for fee totals in legal matters that concluded long ago. In contrast to information involving a pending case, a cumulative fee total for a long-completed matter does not always reveal the substance of legal consultation. The fact that the amounts in both cases were communicated in an invoice transmitted confidentially from lawyer to client does not automatically make this information privileged. Instead, the privilege turns on whether those amounts reveal anything about legal consultation. Asking an agency to disclose the cumulative amount it spent on long-concluded litigation — with no ongoing litigation to shed light on the context from which such records are arising — may

15

communicate little or nothing about the substance of legal consultation. But when those same cumulative totals are communicated during ongoing litigation, this real-time disclosure of ongoing spending amounts can indirectly reveal clues about legal strategy, especially when multiple amounts over time are compared.

Justice Werdegar is concerned that our opinion suggests the "scope of the privilege somehow wanes with the termination of the subject litigation." But the question at issue here is not, as Justice Werdegar suggests, whether privileged material remains privileged when "the attorney-client relationship has ended." (Dis. opn., *post*, at p. 7.) Even while the scope of the attorney-client privilege remains constant over time, the same *information* (for example, the cumulative amount of money that was spent on a case) takes on a different significance if it is revealed during the course of active litigation. During active litigation, that information can threaten the confidentiality of legal consultation by revealing legal strategy. But there may come a point when this very same information no longer communicates anything privileged, because it no longer provides any insight into litigation strategy or legal consultation.

Our conclusion that the privilege turns on content and purpose, not form, fits not only with the terms of the statute but also the law as it existed before the Evidence Code was enacted. The Evidence Code was meant to incorporate prior law on the attorney-client privilege. (See Cal. Law Revision Com. com., 29B pt. 3A West's Ann. Evid. Code (2009 ed.) foll. § 952, p. 307 ["The requirement that the communication be made in the course of the lawyer-client relationship and be confidential is in accord with existing law."].) Before 1965, the long-established rule in California was that the attorney-client privilege — then set

16

forth in the Code of Civil Procedure[4] — protected communications made for the purpose of the attorney's professional representation. (See, e.g., *Solon v. Lichtenstein* (1952) 39 Cal.2d 75, 80 ["A communication to be privileged must have been made to an attorney acting in his professional capacity toward his client."].)

Further support for this conclusion comes from the language and structure of a related statutory scheme. Business and Professions Code section 6148, subdivision (a), describes the information that a contract for legal services (i.e., a fee agreement) must generally contain. Subdivision (b), on the other hand, describes the information that attorney billing statements (such as invoices) must generally contain. (See *id.*, § 6148, subd. (b).) But Business and Professions Code section 6149 states that only *fee agreements* "shall be deemed to be a confidential communication within the meaning of . . . Section 952 of the Evidence Code." This section makes no mention of billing statements or invoices. The Legislature's decision to define both fee agreements and billing statements in one section, while in the very next section subjecting only the former to the attorney-client privilege, suggests that the privilege was not intended to protect both fee agreements and invoices in the exact same way. (See *Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 576 ["When the

---

[4]    "An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment." (Code Civ. Proc., former § 1881, subd. 2, enacted in 1872 and repealed by Stats. 1965, ch. 299, § 2, p. 1297 [enacting Evid. Code].)

Legislature 'has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded.' "].)**5**

These arguments help explain why California courts have generally presumed that invoices for legal services are *not* categorically privileged. (See, e.g., *Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1326-1327 ["we seriously doubt that all — or even most — of the information on each of the billing records proffered to the court was privileged"].) Indeed, disclosure of billing invoices is the norm in the federal courts in California, where "[f]ee information is generally not privileged." (*Federal Sav. & Loan Ins. Corp. v. Ferm* (9th Cir. 1990) 909 F.2d 372, 374; see also *Tornay v. U.S.* (9th Cir. 1988) 840 F.2d 1424, 1426 ["Payment of fees is incidental to the attorney-client relationship, and does not usually involve disclosure of confidential communications arising from the professional relationship."].) Our holding today is consistent with that approach — an approach with which the County, a frequent litigant in federal court, is undoubtedly familiar.

None of the County's remaining arguments supports the conclusion that all information in attorney invoices is categorically privileged. In particular, the County observes that disclosure of invoices can provide adversaries a window into litigation strategies — "a road map as to how the matter is being litigated, or may be litigated in the future." We are sensitive to the County's concern here, but this concern does not require the rule that Court of Appeal established and that the

---

**5** The reason for this discrepancy, according to the County, is that invoices "so obviously met [Evidence Code section 952's] definition of communications" that the Legislature saw no need to specify that they were privileged. We are not convinced. As explained above, we do not think Evidence Code section 952 categorically protects invoices. And, in any event, whether it does is far from "obvious[]."

County insists on, which is a categorical bar on disclosure of a government agency's expenditures for any legal matter, past or present, active or inactive, open or closed. Though the PRA carves out an exemption for privileged portions of government records, "[t]he fact that parts of a requested document fall within the terms of an exemption does not justify withholding the entire document." (*CBS, Inc. v. Block*, *supra*, 42 Cal.3d at p. 653.) Instead, government agencies must disclose "[a]ny reasonably segregable portion" of a public record "after deletion of the portions that are exempted by law." (§ 6253, subd. (a).)

### III. CONCLUSION

The imperative of protecting privileged communications between attorney and client — and thereby promoting full and frank discussion between them — is a defining feature of our law. This imperative does not require us to conclude — as the Court of Appeal did here — that everything in a public agency's invoices for legal services is categorically privileged. Instead, the contents of an invoice are privileged only if they either communicate information for the purpose of legal consultation or risk exposing information that was communicated for such a purpose. This latter category includes any invoice that reflects work in active and ongoing litigation. Accordingly, we reverse the judgment of the Court of Appeal and remand for proceedings consistent with our opinion.

**CUÉLLAR, J.**

**WE CONCUR:**

**CHIN, J.**
**LIU, J.**
**KRUGER, J.**

20

**DISSENTING OPINION BY WERDEGAR, J.**

The importance of the attorney-client evidentiary privilege to the proper functioning of the legal system in this state cannot be overstated. "The attorney-client privilege has been a hallmark of Anglo-American jurisprudence for almost 400 years. [Citations.] The privilege authorizes a client to refuse to disclose, and to prevent others from disclosing, confidential communications between attorney and client. (Evid. Code, § 950 et seq.) Clearly, the fundamental purpose behind the privilege is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters. [Citation.] In other words, the public policy fostered by the privilege seeks to insure 'the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense.' " (*Mitchell v. Superior Court* (1984) 37 Cal.3d 591, 599, fn. omitted.) "Although exercise of the privilege may occasionally result in the suppression of relevant evidence, the Legislature of this state has determined that these concerns are outweighed by the importance of preserving confidentiality in the attorney-client relationship." (*Ibid.*)

With today's decision, a majority of the court undermines this pillar of our jurisprudence, finding legal invoices sent from a law firm to its client, although

initially protected by the attorney-client privilege, may lose such protection once the subject litigation is concluded.  This conclusion finds no support in the plain meaning of the words of the attorney-client privilege as set forth in Evidence Code section 954,[1] and are in fact contrary to a recent decision by this court interpreting the scope of the privilege.  I respectfully dissent.

## I.

The attorney-client privilege is set forth in section 954 and provides in pertinent part that a "client, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ."  The phrase " 'confidential communication between client and lawyer' " is, as relevant here, defined in section 952 as "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence . . . and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship."  No question exists that the invoices at issue in this case comprise "information transmitted" between a law firm and its client, the Los Angeles County Board of Supervisors,[2] that the

---

[1]  All statutory references are to the Evidence Code unless otherwise stated.

[2]  Although we may presume for purposes of argument the fee invoices considered here do not include a "legal opinion formed" or "advice given" within the course of that relationship, section 952's use of the term "includes" means that the scope of the privilege is *not limited* to legal opinions and advice.  " '[I]ncludes' [is] ordinarily a term of enlargement rather than limitation." (*Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1101.)  "The 'statutory definition of a thing as "including" certain things does not necessarily place thereon a meaning limited to the inclusions.' " (*Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 774.)  The majority does not dispute that the attorney-client privilege covers more than just legal opinions and advice, but nevertheless asserts language in various sub-clauses of section 952 mean the attorney-client privilege covers only "communications that bear some relationship to the provision of legal consultation." (Maj. opn., *ante*,

*(footnote continued on next page)*

2

information was generated within the course of the attorney-client relationship, and that the invoices were prepared and transmitted in confidence. As such, the invoices are privileged, and thus not subject to disclosure under the Public Records Act. (Gov. Code, § 6254, subd. (k).)**3**

The majority reaches a different conclusion by embellishing the words of the statutory privilege to discover a heretofore hidden meaning. According to the majority, the "key question" is: "Would treating invoices as sometimes nonprivileged *undermine the fundamental purpose* of the attorney-client privilege?" (Maj. opn., *ante*, at p. 9, italics added.) The opinion then reasons the privilege protects only those "communications between attorney and client *made for the purpose of seeking or delivering the attorney's legal advice or representation*." (*Ibid*., italics added.) Therefore, concludes the majority, "the privilege does not apply to every single communication transmitted confidentially between lawyer and client. Rather, the heartland of the privilege protects those communications *that bear some relationship to the attorney's provision of legal consultation*." (*Id*. at p. 10, italics added.)

---

*(footnote continued from previous page)*

p. 10.) As I explain, *post*, this interpretation of sections 954 and 952 is far too narrow and contrary to existing authority.

**3** Government Code section 6254, subdivision (k) states that the Public Records Act does not require disclosure of the following records: "Records, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, *provisions of the Evidence Code relating to privilege*." (Italics added.) "By its reference to the privileges contained in the Evidence Code, therefore, the Public Records Act has made the attorney-client privilege applicable to public records." (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 370.)

3

The majority's decision to add consideration of a communication's purpose as an additional, nonstatutory element to the Legislature's definition of a "confidential communication" is unsupported in law. Absent those rare situations in which the attorney-client privilege facilitates a person's constitutional rights under the Sixth Amendment,[4] the evidentiary privilege at issue in this case is statutory only. As we have recognized, "[o]ur deference to the Legislature is particularly necessary when we are called upon to interpret the attorney-client privilege, because the Legislature has determined that evidentiary privileges shall be available only as defined by statute. (Evid. Code, § 911.) Courts may not add to the statutory privileges except as required by state or federal constitutional law [citations], *nor may courts imply unwritten exceptions to existing statutory privileges*." (*Roberts v. City of Palmdale*, *supra*, 5 Cal.4th at p. 373, italics added.) As the California Law Revision Commission has commented, "privileges are not recognized in the absence of statute," and "[t]his is one of the few instances where the Evidence Code precludes the courts from elaborating upon the statutory scheme." (Cal. Law Revision Com. com., 29B pt. 3A West's Ann. Evid. Code, foll. § 911, at p. 219.)

This court recently spoke to the scope of the attorney-client privilege in *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725 (*Costco*). In *Costco*, the issue, as in the instant case, concerned a communication between a lawyer and client that arguably contained both confidential information (in the form of legal opinions) and nonconfidential information (such as facts obtained

---

**4**      See, e.g., *Barber v. Municipal Court* (1979) 24 Cal.3d 742, 751 ("if an accused is to derive the full benefits of his [constitutional] right to counsel, he must have the assurance of confidentiality and privacy of communication with his attorney"), relying on *Fisher v. United States* (1976) 425 U.S. 391, 403.

from witnesses).  The *Costco* plaintiffs contended they were entitled to discovery of the nonprivileged portions of a letter legal counsel sent to the defendant. Interpreting sections 952 and 954, this court unanimously rejected the claim, explaining that "[t]he attorney-client privilege attaches to a confidential communication between the attorney and the client and bars discovery of the communication *irrespective of whether it includes unprivileged material*.  As we explained in *Mitchell v. Superior Court*, *supra*, 37 Cal.3d at page 600:  '[T]he privilege covers the transmission of  documents which are available to the public, and not merely information in the sole possession of the attorney or client.  In this regard, *it is the actual fact of the transmission which merits protection*, since discovery of the transmission of specific public documents might very well reveal the transmitter's intended strategy.' "  (*Costco*, *supra*, at p. 734, italics added.) Further, " '[n]either the statutes articulating the attorney-client privilege nor the cases which have interpreted it make any differentiation between "factual" and "legal" information.' "  (*Ibid*.)

The majority seemingly embraces the notion that courts may parse a legal communication to permit disclosure of those parts that were not "made for the purpose of legal consultation" (maj. opn., *ante*, at p. 13), but strains to distinguish *Costco*, *supra*, 47 Cal.4th 725, unconvincingly suggesting that when an attorney bills a client for legal services rendered, he or she steps outside the role of a lawyer and into the role of accountant.  (Maj. opn., *ante*, p. 12 ["the relationship evokes an arm's-length transaction between parties in the market for professional services more than it does the diligent but discreet conveyance of facts and advice that epitomizes the bond between lawyer and client"].)  Accordingly, reasons the majority, legal billing invoices may fall outside the protection of the attorney-client privilege because they "are not made for the purpose of legal consultation." (*Id.*, at p. 13.)  But this is not a situation in which an attorney is acting as

5

something other than a legal representative, such as a real estate agent or business advisor; the invoice in question was for legal services rendered.

More to the point, the majority's line of analysis ignores the core reasoning of *Costco* that section 954 prohibits courts from parsing a communication between lawyer and client in order that those parts not involving a legal opinion or advice can be disclosed. As *Costco* explained, despite what might be the dominant purpose of a communication, "when the communication is a confidential one between attorney and client, *the entire communication, including its recitation or summary of factual material, is privileged*." (*Costco, supra,* 47 Cal.4th at p. 736, italics added.) *Costco*'s analysis, applied here, leads inexorably to the conclusion that the legal invoices at issue are privileged under sections 952 and 954.[5]

Even more pernicious than the majority's improper addition of a nonstatutory prerequisite to the attorney-client privilege, and its unconvincing attempt to distinguish *Costco*, *supra*, 47 Cal.4th 725, is its suggestion that the protective scope of the privilege somehow wanes with the termination of the subject litigation. Thus, the majority opines that "[w]hen a legal matter remains pending and active, the privilege encompasses everything in an invoice—

---

[5]     To the extent the majority relies on former Chief Justice George's concurring opinion in *Costco* (maj. opn, *ante*, at pp. 13–14), it mischaracterizes his views. (*Costco*, *supra*, 47 Cal.4th at pp. 741–744 conc. opn. of George, C. J.). In a separate opinion, former Chief Justice George distinguished the situation in which information is transmitted between the client and the lawyer in the course of the attorney-client relationship, which information is privileged, from the situation in which information is communicated to an attorney outside the context of an attorney-client relationship, which information is unprivileged. "[A] communication in the context of section 952 need not concern litigation; rather it suffices that the communication consist of information transmitted between the client and the lawyer *within the scope* of the attorney-client relationship." (*Id.* at p. 743 (conc. opn. of George, C. J.).)

6

including the amount of aggregate fees." (Maj. opn., *ante*, at p. 15.) But the majority then suggests a more limited rule of privilege may apply once the litigation ends, saying that "[t]he same may not be true for fee totals in legal matters that concluded long ago." (*Ibid.*) That the majority fails to cite any language in sections 952 or 954 supporting such a rule is unsurprising, for nothing in the Evidence Code supports the notion that the reach of the attorney-client privilege is different for pending litigation versus legal matters that have concluded.

Indeed, legal authority is to the contrary. In *Littlefield v. Superior Court* (1982) 136 Cal.App.3d 477, a defendant in a criminal case sought a writ of mandate to force his codefendant to testify and reveal confidential conversations he had with his lawyer, the Los Angeles County Public Defender. (It was the defendant's contention the public defender had disclosed facts about the alleged murders to the codefendant, which allowed him to fabricate testimony detrimental to the defendant.) Although the defendant acknowledged the communications were presumptively protected by the attorney-client privilege, he argued "that privilege may be deemed attenuated because the attorney/client relationship is 'near an end.'" (*Id.* at p. 481.) The appellate court properly disagreed, explaining that "the attorney/client privilege continues even after the end of threat of punishment" (*id.* at p. 482), and that "[n]othing in the statutes controlling the privilege suggests it is to be limited or diminished in importance as a function of the continuance of the relationship that existed at the time of the confidential communications herein sought" (*ibid.*). In other words, the protective power of the attorney-client privilege is not reduced simply because the attorney-client relationship has ended or is about to end. (Cf. *HLC Properties, Ltd. v. Superior Court* (2005) 35 Cal.4th 54, 66 [attorney-client privilege continues to protect

7

covered communications until no person or entity exists who is statutorily authorized to assert it].)

Secondary sources are even more pointed. The attorney-client privilege "attaches upon the initial consultation . . . and continues beyond the end of the attorney-client relationship for so long as a 'holder' is in existence." (Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2003) ¶ 7:265, p. 7–114 (Aug. 2016 Update).) "The right to claim the attorney-client privilege is not limited to the litigation or controversy in the course of which a protected communication was made. *It survives the termination of litigation* and continues even after the threat of liability or punishment has passed." (*Id.*, ¶ 7:269, p. 7–115, italics added.)

The majority's suggestion the protective power of the attorney-client privilege under section 954 "may not" (maj. opn., *ante*, at p. 15) continue to encompass all portions of a document that previously qualified as a "confidential communication" under section 952 is mischievous in the extreme. Following today's decision, attorneys in this state must counsel their clients that confidential communications between lawyer and client, previously protected by the attorney-client privilege, may be forced into the open by interested parties once the subject litigation has concluded. If a limiting principle applies to this new rule, it is not perceptible to me.**6**

---

**6** The majority confusingly asserts "the scope of the attorney-client privilege remains constant over time," but that, after an undetermined period of time, privileged "*information . . .* takes on a different significance" (maj. opn., *ante*, p. 16, italics added), such that it can lose its confidential status. But if the scope of the privilege is constant over time, how information—once privileged— nevertheless loses its protected status is unexplained by the majority. If the majority is saying that a court may refuse to recognize the privileged status of once-privileged information if it determines the information is no longer of

*(footnote continued on next page)*

Nor is it any saving grace that "disclosure of billing invoices is the norm in the federal courts in California, where '[f]ee information is generally not privileged.' " (Maj. opn, *ante*, at p. 18.)  Although by this argument the majority suggests that a strong weight of legal opinion backing its views exists in the federal universe, such support is ephemeral.  The cases cited by the majority rely on Federal Rule of Evidence 501, which simply incorporates federal common law.[7]  By contrast, the scope of the attorney-client privilege in California state courts is governed by the detailed and specific definition of a "confidential communication" as set forth in section 952.  The majority's comparison of apples to oranges is thus unpersuasive.

## II.

As noted above, the conclusion reached by the majority today is inconsistent with our interpretation of section 952 in *Costco*, *supra*, 47 Cal.4th 725.  But even setting *Costco* aside, this court is simply not free to add elements and prerequisites to a statutory rule of evidentiary privilege.  Whether it might be

_____

*(footnote continued from previous page)*

strategic value to a litigant, I disagree, and further observe the majority cites no authority for this remarkable position.

[7]     Rule 501 of the Federal Rules of Evidence (28 U.S.C.) states in pertinent part:  "The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
  • the United States Constitution;
  • a federal statute; or
  • rules prescribed by the Supreme Court."
But the same rule goes on to suggest the primacy of state law rules of privilege, providing that, "in a civil case, *state law governs privilege regarding a claim or defense for which state law supplies the rule of decision*."  (*Ibid*., italics added.)

9

wise policy to find a "confidential communication" within the meaning of section 952 must be one "made for the purpose of seeking or delivering the attorney's legal advice or representation" (maj. opn., *ante*, at p. 9), is a question more properly consigned to the discretion of the Legislature and not this court.

I dissent.

**WERDEGAR, J.**


**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**

10

*See last page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Los Angeles County Board of Supervisors v. Superior Court
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 235 Cal.App.4th 1154
**Rehearing Granted**

_____

**Opinion No.** S226645
**Date Filed:** December 29, 2016
_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Luis A. Lavin

_____

**Counsel:**

John F. Kratli, Mark J. Saladino and Mary C. Wickham, County Counsel, Roger H. Granbo, Assistant County Counsel, Jonathan McCaverty, Deputy County Counsel; Greines, Martin, Stein & Richland, Timothy T. Coates and Barbara W. Ravitz for Petitioners.

Horvitz & Levy, Lisa Perrochet, Steven S. Fleischman and Jean M. Doherty for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Petitioners.

Jennifer B. Henning for California State Association of Counties and League of California Cities as Amici Curiae on behalf of Petitioners.

Keith J. Bray; Dannis Woliver Kelley, Sue Ann Salmon Evans and William B. Tunick for Education Legal Alliance of the California School Boards Association as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Peter J. Eliasberg; Davis Wright Tremaine, Jennifer L. Brockett, Nicolas A. Jampol, Rochelle L. Wilcox, Colin D. Wells and Diana Palacios for Real Parties in Interest.

Reuben Raucher & Blum and Stephen L. Raucher for Beverly Hills Bar Association as Amicus Curiae on behalf of Real Parties in Interest.

Tom Myers and Arti Bhimani for AIDS Healthcare Foundation as Amicus Curiae on behalf of Real Parties in Interest.

Ram, Olson, Cereghino & Kopczynski and Karl Olson for Los Angeles Times Communications LLC, McClatchy Newspapers, Inc., Gannett, First Amendment Coalition, California Broadcasters Association and California Newspapers Publishers Associaiton as Amici Curiae on behalf of Real Parties in Interest.

**Counsel:**

Arthur S. Pugsley, Melissa Kelly; Joshua R. Purtle and Jaclyn H. Prange for Los Angeles Waterkeeper and Natural Resources Defense Council as Amici Curiae on behalf of Real Parties in Interest.

Law Office of Chad D. Morgan and Chad D. Morgan for Leane Lee and Coalition of Anaheim Taxpayers for Economic Responsibility as Amici Curiae on behalf of Real Parties in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Timothy T. Coates
Greines, Martin, Stein & Richland
5900 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90036
(310) 859-7811

Rochelle L. Wilcox
Davis Wright Tremaine
865 South Figueroa, Suite 2400
Los Angeles, CA  90017
(213) 633-6800