Filed 12/23/20; Modified and Certified for Pub. 1/21/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL PATRICK KELLY,<br><br>    Defendant and Appellant. | 2d Crim. No. B301916<br>(Super. Ct. No. 2016037654)<br>(Ventura County) |

       Michael Patrick Kelly appeals an order awarding restitution to Kelly's crime victims following his conviction for false personation of another (Pen. Code,[1] § 529, subd. (a)(3)) (count 1); unauthorized use of personal identifying information of another (§ 530.5, subd. (a)) (count 2); and disobeying a court order (§ 166, subd. (a)(4)) (count 3).  We conclude, among other things, that the trial court properly awarded restitution to Kelly's victims for attorney fees and costs they incurred as a result of Kelly's conduct.  We affirm.

---

      [1] All statutory references are to the Penal Code.

FACTS

Charles Schwab Co., Inc. (Schwab) terminated Kelly's contract as an "independent investment advisor." (*People v. Kelly* (Dec. 3, 2019, B296697) [nonpub. opn.].) In 2013, Schwab obtained legal counsel and obtained a workplace violence restraining order to protect its employees from Kelly's threatening behavior. (*Ibid.*) The trial court ordered Kelly to stay 100 yards away from any of Schwab's offices and prohibited him from contacting Schwab's employees.

Kelly repeatedly violated the restraining order by contacting Schwab employees and pretending to be Craig Cross, an "advisor with a firm of approximately four billion under management." (*People v. Kelly, supra*, B296697.) Cross did not give Kelly permission to use his name, job title, or his company's name for any purpose. Kelly used this false identity pretending to be Cross to contact or meet with Schwab employees that the trial court had prohibited him from contacting. He used it to penetrate Schwab's business and obtain information he was not authorized to receive. Schwab hired a law firm to protect itself and its employees from Kelly while Kelly was engaging in a long course of conduct to unlawfully target Schwab. Those lawyers investigated and proved that Kelly had violated the restraining order, and they provided evidence to law enforcement to prosecute Kelly.

On December 3, 2019, we affirmed Kelly's conviction for the crimes of false personation of another, unauthorized use of personal identifying information, and disobeying a court order. (*People v. Kelly, supra*, B296697.)

The trial court held a hearing to determine restitution for the economic losses the victims of Kelly's crimes (Cross and

2

Schwab) had suffered. For Cross, the People sought "$905.00, as reimbursement for attorney's fees associated with being a victim of identity theft." Cross submitted "a Victim Loss statement" to support his claim for reimbursement.

Schwab sought reimbursement for attorney fees and costs it incurred: 1) in seeking a restraining order against Kelly, 2) for investigating and proving Kelly had secretly violated the restraining order, and 3) for providing evidence to law enforcement and for assisting law enforcement in prosecuting Kelly. Schwab's request for restitution was supported by the declaration of its lawyer with billing records, a prosecutor's written statement, two letters containing statements of Schwab's loss submitted to the probation department, and a probation memorandum.

The trial court ordered restitution for Cross in the amount of $905 and restitution for Schwab in the amount of $221,140.40.

DISCUSSION

*Restitution*

I

Kelly contends the restitution awards to Schwab and Cross for attorney fees and costs must be set aside because the awards were not related to litigation instituted to collect money to reimburse Schwab and Cross for economic losses. We disagree.

Schwab sought reimbursement for: 1) $62,520.62 for attorney fees and costs to obtain a restraining order to protect Schwab employees from Kelly's threatening behavior; and 2) $221,140.40 in attorney fees and costs it incurred for its counsel to investigate and prove that Kelly had engaged in a secret unlawful course of conduct to violate that restraining order.

3

Cross sought $905 as "reimbursement for attorney's fees associated with being a victim of identity theft."

The trial court awarded restitution to Cross for $905 and restitution to Schwab for $221,140.40.  It did not award Schwab restitution for the attorney fees and costs it incurred for obtaining the restraining order.

There is "a broad constitutional mandate of California Constitution, article I, section 28, subdivision (b), that restitution must be imposed 'in every case . . . in which a crime victim suffers a loss . . . .' " (*People v. Giordano* (2007) 42 Cal.4th 644, 655.)

Kelly contends the restitution awards made by the trial court were not authorized by the restitution statute.  (§ 1202.4.)

The People respond those fees and costs were proper because they were economic losses actually incurred by Schwab and Cross as victims of Kelly's criminal conduct.  We agree.

"The restitution statute allows for recovery of a broad variety of economic losses that are incurred as a result of the defendant's criminal conduct.  (§ 1202.4, subd. (f)(3).)" (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1046.)  Section 1202.4, subdivision (f)(3) provides, "To the extent possible, the restitution order shall be prepared by the sentencing court, shall identify each victim and each loss to which it pertains, and shall be of a dollar amount that is sufficient to *fully reimburse* the victim or victims *for every determined economic loss incurred* as the result of the defendant's criminal conduct, *including, but not limited to*, all of the following . . . ."  (Italics added.)  The statute then lists several examples of economic losses.

With respect to attorney fees, one example in the statutory list refers to "[a]ctual and reasonable attorney's fees and other

4

costs of collection accrued by a private entity on behalf of the victim."  (§ 1202.4, subd. (f)(3)(H).)

Kelly contends the attorney fees and costs the trial court awarded do not fall within that example and they are therefore not authorized as economic losses that may be ordered as restitution.

The People respond that the list of examples in the statute is not an exclusive list of economic losses.  They claim the trial court could reasonably infer the amounts it awarded were economic losses in the form of attorney fees and costs that were incurred by Schwab and Cross as a direct result of Kelly's criminal conduct.  We agree.

In *Giordano,* our Supreme Court ruled that "the constitutional and legislative intent to provide for all crime victim losses, and the expressly nonexclusive list of categories of loss included in the direct restitution statute" refuted a claim that the courts had to "read into that statute an implied limitation on restitution" to only award reimbursement for those statutory examples.  (*People v. Giordano, supra*, 42 Cal.4th at p. 660.)

"Because the statute uses the language 'including, but not limited to' these enumerated losses, a trial court may compensate a victim *for any economic loss which is proved to be the direct result of the defendant's criminal behavior*, even if not specifically enumerated in the statute."  (*People v. Keichler, supra,* 129 Cal.App.4th at p. 1046, italics added.)

The People asked the trial court to award restitution to Schwab and Cross because "each amount of restitution requested in this case is appropriate as each reasonably relates to the crime defendant was convicted of."  The attorney fees and costs Schwab

actually incurred as a victim of Kelly's criminal conduct were supported by the declaration of Schwab's lawyer, Robyn Crowther. Schwab hired counsel to protect the company and its employees from Kelly while Kelly was engaging in a secret, unlawful course of conduct to harm Schwab.

Under the restitution statute, "[a] victim's restitution right is to be broadly and liberally construed." (*People v. Mearns* (2002) 97 Cal.App.4th 493, 500.) "[T]he overall history of the amendments to section 1202.4 reflects a legislative intent to enlarge, not restrict, the availability of restitution." (*People v. McCarthy* (2016) 244 Cal.App.4th 1096, 1107.)

Restitution may include expenses incurred to protect the crime victim from the defendant. (*People v. Mearns*, *supra*, 97 Cal.App.4th at p. 501.) Awarding restitution to Schwab because it hired counsel to protect itself from a criminal course of conduct falls within the scope and remedial purpose of section 1202.4. Those fees and costs were " 'a logical result of appellant's criminal conduct.' " (*People v. Maheshwari* (2003) 107 Cal.App.4th 1406, 1410.) Failure to award them as restitution would be "to fail to fully reimburse" the victim. (*Ibid*.) That would mean the victim would incur the losses instead of the one whose criminal conduct caused them. These were consequently economic losses that may be awarded as restitution under the statute. (*People v. Keichler*, *supra*, 129 Cal.App.4th at p. 1046.)

Kelly notes these were not attorney fees to collect damages against him. But they were legal fees and costs in response to his on-going criminal conduct. They were more important for the protection of the crime victim's current safety than merely suing for damages after the fact. They included costs for immediately protecting Schwab from Kelly, investigating his conduct,

6

obtaining evidence, and assisting in the criminal prosecution. A business that is a crime victim, and has incurred "out-of-pocket expenses assisting" law enforcement "in the investigation and prosecution" of the defendant, has incurred "economic loss" and is entitled to restitution. (*People v. Ortiz* (1997) 53 Cal.App.4th 791, 797.)

Kelly contends some of the attorney fees involved time spent by Schwab's attorneys to attempt to hold him in contempt in the "civil" workplace violence restraining order case. He notes that case was ultimately stayed after his arrest. But that attorney time was the result of Kelly's "criminal conduct" in violating the restraining order. That was the same conduct that was involved in Kelly's criminal case. The evidence that Schwab's attorneys obtained was helpful to the prosecution in the criminal case.

Kelly cites *People v. Fulton* (2003) 109 Cal.App.4th 876. But that case is distinguishable. There the court in interpreting the law, as it was in 2003, said that because the Legislature determined that noneconomic damages could not be awarded as restitution, "it rationally follows that the Legislature did not perceive a need for a victim to recover attorney fees *incurred to collect noneconomic damages . . . .*" (*Id.* at p. 884, italics added.) But here the victims are not seeking noneconomic damages; they suffered economic damages. *Fulton* did not involve the type of attorney fees incurred here – fees spent to protect the crime victim from the criminal. Moreover, *Fulton* was decided prior to our Supreme Court's decision in *Giordano.* The economic damages the trial court awarded here are consistent with the *Giordano* standard. Whether described as attorney fees or costs, they necessarily involved money spent and incurred because of

7

Kelly's unlawful conduct. They consequently constitute "an economic loss incurred as the result of a criminal act." (*People v. Giordano*, *supra*, 42 Cal.4th at p. 661.)

## II

Kelly contends that Schwab failed to provide documentation allowing the trial court to make an informed determination about whether the amount of attorney fees Schwab requested was reasonable.

A " 'hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution.' " (*People v. Keichler*, *supra*, 129 Cal.App.4th at p. 1048.) "Section 1202.4 does not, by its terms, require any particular kind of proof." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542-1543.) "A restitution order is reviewed for abuse of discretion and will not be reversed unless it is arbitrary or capricious." (*Id.* at p. 1542.)

*Schwab's Documentation – Counsel's Declaration*

Kelly contends Schwab failed to present documentation to sufficiently identify the legal services and costs it paid. But Schwab presented proof of the exact amount of money Schwab paid for: 1) legal services and costs for obtaining the restraining order, and 2) legal services and costs incurred after the restraining order issued. Schwab's attorney Crowther submitted a declaration that showed Schwab paid $62,520.62 for legal fees and costs to obtain the restraining order against Kelly to protect Schwab's employees from Kelly's threatening behavior. But, to Kelly's benefit, the trial court did not award Schwab those fees and costs for obtaining the restraining order.

Crowther said her firm also provided legal services to Schwab to: 1) investigate Kelly's secret attempts to violate the

8

restraining order and unlawfully penetrate Schwab's business, 2) pursue contempt, and 3) assist law enforcement and the prosecutor in prosecuting Kelly. She said Schwab paid $221,140.40 for those post-restraining order legal fees and costs. Evidence showing what a crime victim actually paid as an attorney fee is at least " 'prima facie evidence of a loss entitling [the victim] to compensation.' " (*People v. Grundfor* (2019) 39 Cal.App.5th 22, 31.)

Crowther described the nature of those legal services and costs. She declared that she and two other attorneys "prepared papers to ask the Superior Court to find Mr. Kelly in contempt of the restraining order." Some of the costs incurred included hiring "a voice recognition expert" to "evaluate telephone recordings of calls that Mr. Kelly made in violation of the restraining order" and "court reporter fees to transcribe those recordings." Her firm documented evidence to show Kelly was in contempt of the restraining order. After Kelly was arrested, that evidence was shared with law enforcement and they "assisted [law enforcement's] investigation as requested." Crowther declared, "Schwab incurred attorneys' fees and other costs to pursue a finding of contempt against Mr. Kelly and to participate in the criminal investigation conducted into his actions." In Schwab's written request for restitution, Crowther said fees and costs included: 1) "travel expenses for" witnesses, and 2) "attorneys' fees required to prepare the witnesses to testify in a criminal proceeding when there were still pending civil actions between Schwab and Mr. Kelly to which those witnesses' testimony was relevant."

Crowther said her firm's efforts to prove Kelly was in contempt and "to participate in the criminal investigation

9

conducted into his actions" involved *several years* of legal services from "late 2014" to October 2018. It included her work, the work of her partner, two associates, a paralegal, and three litigation "[s]upport personnel." Crowther's declaration included the "service periods" for services provided for Schwab, and the amount billed for legal services and costs for each of those time periods. The dates of legal services performed for those service periods included April 2013, October 2014 through December 2014, January 2015 through July 2015, September 2015, January 2016 through March 2016, May 2016, August 2016, October 2016, January and February 2017, August 2017, October 2017, and September 2018.

*Billing Records*

Crowther attached copies of billing invoices to Schwab. Those billing invoices span pages 44 through 104 of the clerk's transcript. Kelly contends those documents were "conclusory" and were not sufficiently detailed for an attorney fee award.

First, "there is no legal requirement that an attorney supply billing statements to support a claim for attorney fees." (*Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 269.) Thus, even had Crowther not attached any billing statements, that would not preclude an attorney fee award. Here the billing invoices were attached as exhibits to support statements Crowther made in her declaration about the fees and costs incurred and paid by Schwab.

Second, the standard of evidence at a restitution hearing does not necessarily require a crime victim to produce detailed billing records, receipts, or business invoices. (*People v. Gemelli*, *supra*, 161 Cal.App.4th at p. 1542; *People v. Prosser* (2007) 157 Cal.App.4th 682, 692.) A victim's loss statement submitted to

10

probation may be sufficient to support a prima facie showing of loss. (*Gemelli*, at p. 1544.) Here there were two letter statements submitted to probation from Schwab's lawyers. There was also Crowther's declaration. An under oath statement from a person qualified to state facts about the economic loss the business experienced may also be sufficient for a prima facie showing of loss. Then the burden shifts to the defendant to show the loss is less than the figure the crime victim presented. (*People v. Sy* (2014) 223 Cal.App.4th 44, 63; *Prosser*, at p. 692.) The trial court has substantial discretion to determine which party met their respective burdens.

For determining attorney fees, "*[a]ny* rational calculation method is permissible." (*People v. Grundfor, supra*, 39 Cal.App.5th at p. 31.) "The law is clear . . . that an award of attorney fees may be based on counsel's declarations, without production of detailed time records." (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375.) Billing documentation is not required. (*Mardirossian & Associates, Inc. v. Ersoff, supra*, 153 Cal.App.4th at p. 269.)

Here Schwab presented *both* the declaration of Crowther *and* the billing invoices, and two statements submitted to the probation department. Crowther was qualified to state facts about the legal services she provided to Schwab and the amount of money Schwab paid for those services. Crowther's declaration provided specific information for the court. It included the names of the lawyers who provided legal services, their backgrounds and experience, their hourly rates, and facts showing why those rates were reasonable. She provided the names of the other members of the staff of the firm who provided services and their service period dates.

11

*The Restitution Hearing*

At the restitution hearing, Kelly's counsel made legal arguments challenging the billing invoices and the redactions. But he did not produce, or ask to produce, any witnesses or evidence. Crowther was present and prepared to testify.

The prosecutor asked Kelly's counsel "if there's . . . any challenge to the foundation for these documents . . . . [Crowther] *is here and can lay that foundation*." (Italics added.) *This provided Kelly with an opportunity to question Crowther about the invoices and the redactions.* In her declaration, Crowther said Schwab "incurred *the full amount of those invoices to address Mr. Kelly's conduct*." She also created a chart in her declaration showing the legal fees and costs Schwab incurred *for each* of the "service periods" from April 2013 to September 2018 with a total of $256,455 "fees" and $27,206.02 "costs." She described the legal services provided to Schwab. If Kelly disagreed with any of these claims in her declaration, he had the opportunity to call her as a witness, challenge them, and obtain more details. But Kelly's counsel did not request that Crowther testify. He only presented legal arguments.

The decision to decline the opportunity to question Crowther undermines Kelly's claims about his lack of opportunity to challenge the billing invoices and the legal fees in the trial court. (*People v. Prosser*, *supra*, 157 Cal.App.4th at p. 692; see also *People v. Richardson* (2008) 43 Cal.4th 959, 1011 [claim of trial court error rejected where defendant had the opportunity to question the relevant witness and declined to do so]; *People v. Holt* (1997) 15 Cal.4th 619, 653; *People v. Watson* (1956) 46 Cal.2d 818, 829.)

12

Moreover, because Crowther established the amount of legal fees and costs incurred, "it was *up to appellant to demonstrate this amount was unreasonable.*" (*People v. Pinedo* (1998) 60 Cal.App.4th 1403, 1406, italics added; see also *People v. Selivanov* (2016) 5 Cal.App.5th 726, 788 ["the burden shifts to the defendant to prove by a preponderance of the evidence that the loss is other than that claimed"]; *People v. Gemelli, supra*, 161 Cal.App.4th at p. 1543 [defendant's burden is "to disprove the amount of losses claimed by the victim"].)

In Kelly's brief that he filed for the restitution hearing, he noted that in 2016 Crowther sent a letter to the probation office requesting restitution for legal fees and costs for "at least 120,000.00" relating to the civil contempt proceedings. Crowther claimed Schwab incurred costs: 1) "in excess of $20,000.00" for preparing the application for civil contempt; 2) "at least another $20,000.00" for the services of a voice recognition expert to verify Kelly's contacts with Schwab in violation of the restraining order; and 3) "at least an additional $80,000.00" for expenses and attorney fees associated with the days of hearings involved in the contempt proceeding. These included travel expenses for Schwab employees who testified and travelled from San Francisco, Arizona, and Florida.

Kevin Lewis, another Schwab lawyer, sent a letter to the probation department stating that, in addition to the fees and costs detailed by Crowther's letter, Schwab "incurred more than $10,000 in additional costs to prepare witnesses for the criminal trial and for them to travel to Ventura County from San Francisco to testify." Crowther's declaration showed Schwab incurred additional attorney fees and costs.

13

Kelly argued these fees and costs were excessive.  But at the restitution hearing, it is the defendant's burden to prove "that the amount claimed is excessive." (*People v. Weatherton* (2015) 238 Cal.App.4th 676, 684.)  Kelly did not show why he did not call an expert witness to *present evidence* to contest the reasonableness of these fees and costs.  (*People v. Cain* (2000) 82 Cal.App.4th 81, 87.)  At the end of the hearing, the trial court informed counsel that it was taking the matter under submission and it wanted to know if counsel would present evidence.  Kelly's counsel indicated he would not introduce evidence.  He said, among other things, "[S]o I *don't want to litigate how much they actually spent*.  I'm just saying I don't know what it was for." (Italics added.)  If Kelly believed Crowther's declaration was not "sufficiently detailed," he "could have sought greater detail" by calling her as a witness. (*People v. Prosser*, *supra*, 157 Cal.App.4th at p. 692.)  The trial court also asked counsel if they wanted the opportunity to have another restitution hearing.  Kelly's counsel said "No."  " ' "A defendant's due process rights are protected when [he or she has] notice of the amount of restitution claimed . . . , and . . . has an opportunity to challenge the figures . . . ." ' " (*Ibid*.)  Kelly had both.

The amount of fees and costs involved services rendered over a period of several years.  Moreover, the trial court knew how Kelly had targeted Schwab.  It was in the best position to determine whether the amount requested as restitution was disproportionate given Kelly's on-going pattern of criminal conduct and Schwab's need to hire counsel to protect itself and assist in prosecuting Kelly.

14

*Unfair or Unauthorized Procedures by Schwab's Counsel?*

Kelly contends Crowther "consciously chose not" to disclose the unredacted billing invoices to the court. He claims this deprived the trial court of an opportunity to review them and she did not present any valid ground for their nondisclosure. He argues that he was entitled to see all the unredacted billing invoices.

*Attorney-Client Privilege*

But Crowther claimed the redactions were necessary to protect attorney-client communications. Kelly suggests her claim of privilege does not apply to her billings.

Not all the information contained in billing invoices is "categorically privileged." (*Los Angeles County Bd. of Supervisors v. Superior Court* (2016) 2 Cal.5th 282, 299.) A billing invoice, however, may contain privileged information that does not have to be disclosed. This may include, among other things: 1) information conveyed " 'for the purpose of . . . legal representation' "; 2) informing the client "of the nature or amount of work occurring in connection with a pending legal issue"; and 3) "aggregate figures describing the total amount spent on continuing litigation during a given quarter or year." (*Id.* at p. 297.) It may also include " 'a legal opinion formed and the advice given by the lawyer . . . .' " (*City of San Diego v. Superior Court* (2018) 30 Cal.App.5th 457, 466.)

Where a billing is relevant for a court proceeding, counsel may "separate those portions of a record subject to disclosure from privileged portions." (*Los Angeles County Bd. of Supervisors v. Superior Court, supra*, 2 Cal.5th at p. 292; *Layfayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1382 [party seeking attorney fees may redact

15

portions of billings protected by attorney-client privilege and does not have to "waive the privilege to obtain fees"]; see also *Banning v. Newdow* (2004) 119 Cal.App.4th 438, 454 [existence of redactions did not mean appellant was "unable to challenge the reasonableness of the fees"].) Crowther claimed she redacted portions of the billing invoices because of her concern about disclosure of confidential information to Kelly. Her firm had provided legal services to protect Schwab from Kelly.

Crowther noted that confidential information related to pending litigation is protected from disclosure. (*Los Angeles County Bd. of Supervisors v. Superior Court*, *supra*, 2 Cal.5th at p. 288.) In her declaration, she declared there was pending litigation with Kelly. Kelly challenged that, but he did not testify, present a declaration to dispute her factual claim, or question Crowther. He consequently did not "develop the fullest possible evidentiary record" to support his position. (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1433.) Kelly may not claim trial court error for not determining the scope of the privilege because Kelly was offered the opportunity to question the person claiming the privilege (Crowther) and Kelly declined. (*People v. Richardson*, *supra*, 43 Cal.4th at p. 1011.)

Moreover, even if there was no pending litigation, the result does not change. For closed cases, the "fee totals" in billings may be disclosed. (*County of Los Angeles Bd. of Supervisors v. Superior Court* (2017) 12 Cal.App.5th 1264, 1275.) Here Kelly received the fee totals in the billings. He contends he also was entitled to see the redacted communications between Schwab's counsel and Schwab in the billings which describe the legal services provided for those fee totals. But "[b]illing entries

16

or portions of invoices *that describe the work performed* for a client . . . fall directly in the 'heartland' *protected by the privilege*." (*Id*. at p. 1274, italics added.)

In addition, in restitution hearings, a crime victim who submits bills to prove losses does not thereby waive privileged or confidential information relating to the professional services provided to the victim as a result of the crime. (*People v. Garcia* (2010) 185 Cal.App.4th 1203, 1210, 1212; *Layfaette Morehouse, Inc. v. Chronicle Publishing Co.*, *supra*, 39 Cal.App.4th at p. 1382 [party may seek attorney fees using redactions without waiving privileged communications].) Kelly has not shown why the trial court could not find Crowther's concern for confidentiality was genuine.

Crowther was concerned about Kelly's conduct directed at her law firm. She noted that Kelly had recently called members and former employees of her firm at their homes or on their personal cell phones. She said, "Kelly's refusal to accept responsibility for his actions *persists through this day* and is evident in the position he has taken with respect to contesting Schwab's restitution request." (Italics added.)

### The Offer for an In Camera Review

Kelly's contention that Crowther was unfairly trying to hide the unredacted billings is not correct. In Schwab's victim brief, Crowther said, "If the Court believes that it requires additional information about the substance of the work that attorneys and others performed, *Schwab is willing to submit its unredacted invoices to the Court for in camera review*." (Italics added.) What she proposed was not unfair. It is a standard procedure that a party claiming a privileged communication may consent to use. (*County of Los Angeles Bd. of Supervisors v.*

17

*Superior Court*, *supra*, 12 Cal.App.5th at p. 1276; *League of California Cities v. Superior Court* (2015) 241 Cal.App.4th 976, 990.)  It provides a chance to test the scope of privilege and preserve a record.  It provided Kelly with the opportunity at the hearing to request the court to review the unredacted invoices "to determine if some protection is warranted."  (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 740.)

Had Kelly made that request and had he questioned Crowther, he could have potentially preserved a full record for review.  But Kelly did not take advantage of those opportunities.  We may not draw favorable inferences where the appellant could have, but did not take all the steps necessary to preserve a more complete record.  (*People v. Richardson*, *supra*, 43 Cal.4th at p. 1011 [defendant's failure to question the witness claiming the privilege constituted "acquiescence in the claim of privilege"]; *People v. Holt*, *supra*, 15 Cal.4th at p. 653; *People v. Watson*, *supra*, 46 Cal.2d. at p. 829; *People v. Garcia*, *supra*, 185 Cal.App.4th at p. 1214; *Tudor Ranches, Inc. v. State Comp. Ins. Fund*, *supra,* 65 Cal.App.4th at p. 1433.)

Kelly also had the opportunity to file counter-declarations to challenge facts Crowther stated and place evidentiary facts in issue.  But he simply filed a brief with exhibits.  But that was not an evidentiary showing made under oath; and because he produced argument instead of evidence at the hearing, the trial court could reasonably infer he did not meet his burden to contest Schwab's economic loss.  (*People v. Keichler*, *supra*, 129 Cal.App.4th at p. 1048 ["Given defendant's *failure to offer any evidence* to challenge any of the amounts presented, the trial court did not abuse its discretion in awarding those amounts" (italics added)]; *People v. Pinedo*, *supra*, 60 Cal.App.4th at

18

p. 1406.)  The court could find Crowther's declaration, the billings, and the two statements Schwab submitted to the probation department constituted the relevant evidence that supported the restitution award.  (*People v. Cain*, *supra*, 82 Cal.App.4th at p. 89.)

In her declaration, Crowther said Schwab *actually paid $283,661.02 in legal fees and costs* because of Kelly's conduct.

The trial court, acting within its discretion, elected not to award Schwab all the fees and costs it actually paid.  It reduced the restitution to Schwab to $221,140.40.  Kelly has not shown the trial court abused its discretion.  (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.)

We have reviewed Kelly's remaining contentions and we conclude he has not shown grounds for reversal.

DISPOSITION

The order is affirmed.



GILBERT, P. J.

We concur:


YEGAN, J.


TANGEMAN, J.

19

Gilbert A. Romero, Judge

Superior Court County of Ventura

_____

George L. Schraer for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Ryan M. Smith, Deputy Attorney General, for Plaintiff and Respondent.

Filed 1/21/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL PATRICK KELLY,<br><br>  Defendant and Appellant. | 2d Crim. No. B301916<br>(Super. Ct. No. 2016037654)<br>(Ventura County)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING, CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on December 23, 2020, be modified as follows:

1. On page 1, the following sentence is to become the first paragraph in the opinion: "Here we decide that victims may recover attorney fees and costs occasioned by a defendant's criminal conduct."

There is no change in the judgment.

Appellant's petition for rehearing is denied.

The opinion in the above-entitled matter filed on December 23, 2020, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


GILBERT, P.J.         YEGAN, J.         TANGEMAN, J.