Filed 7/27/21 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| VOICE OF SAN DIEGO et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF SAN DIEGO COUNTY, <br><br> Respondent; <br><br> COUNTY OF SAN DIEGO, <br><br> Real Party in Interest. | D078415 <br><br> (San Diego County <br> Super. Ct. No. 37-2020-00026651-CU-WM-CTL) <br><br> ORDER MODIFYING OPINION <br><br> NO CHANGE IN JUDGMENT |

THE COURT:

On the court's own motion, it is ordered that the opinion filed on July 16, 2021, be modified on page 37 to add the following as the last sentence of the "DISPOSITION":

Pursuant to California Rules of Court, rule 8.493(a)(1)(B), the parties shall bear their own costs in this proceeding.

There is no change in judgment.

McCONNELL, P. J.

Copies to: All parties

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| VOICE OF SAN DIEGO et al., | D078415 |
| Petitioners, | (San Diego County |
| v. | Super. Ct. No. 37-2020-00026651-CU-WM-CTL) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| COUNTY OF SAN DIEGO, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate.  Joel R. Wohlfeil, Judge.
Petition denied.

Law Office of Felix Tinkov and Felix M. Tinkov, for Petitioners.

Katie Townsend, Bruce D. Brown and Shannon A. Jankowski for
Reporters Committee for Freedom of the Press, as Amici Curiae on behalf of
Petitioners.

No appearance for Respondent.

Office of County Counsel, Jeffrey P. Michalowski, County Counsel, for Real Party in Interest.

In this matter, we consider a request made by three news media organizations under the California Public Records Act (Gov. Code, § 6250 et seq.; PRA)[1] to obtain unredacted records from the County of San Diego (County) that show the exact location of disease outbreaks during the COVID-19 pandemic. Specifically, the County maintains a spreadsheet showing each outbreak of COVID-19 in the County, which includes the applicable dates of the outbreak, the city where it occurred, the number of people involved, and whether the outbreak occurred in a community setting, a skilled nursing facility or a non-skilled congregate living facility. When releasing the spreadsheet to the public, the County redacts the columns that would show the specific name and address of each outbreak location. Nevertheless, for each outbreak in a community setting, the spreadsheet shows the *type* of location where the outbreak occurred, such as a restaurant, a grocery store, a gym, a salon, or a residence, among others. In their petition for an extraordinary writ, Voice of San Diego, KPBS Public Broadcasting (KPBS), and San Diego Union Tribune (collectively, petitioners) contend that the trial court improperly concluded that the County is entitled to redact information about the exact location of the outbreaks.

As we will explain, we conclude that the County properly withheld the specific location of COVID-19 outbreaks under the catchall exemption in the PRA. That provision allows a public agency to withhold a public record when it meets its burden to prove "on the facts of the particular case [that] the

---

[1] Unless otherwise indicated all further statutory references are to the Government Code.

2

public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." (§ 6255, subd. (a).) The County submitted uncontradicted evidence, contained in the declaration of its public health officer, Dr. Wilma Wooten, that disclosing the exact name and address of an outbreak location would have a chilling effect on the public's willingness to cooperate with contact tracing efforts. Although we do not take lightly the countervailing public interest in obtaining access to public records, and we recognize the vital role that the news media plays in obtaining and disseminating information in a time of crisis, the County has convincingly shown that the value of its ability to conduct effective contact tracing in the midst of a deadly pandemic clearly outweighs the public's interest in obtaining information about the exact outbreak locations.

Accordingly, we deny the petition for an extraordinary writ.

I.

FACTUAL AND PROCEDURAL BACKGROUND

The original version of the petition for writ of mandate and complaint at issue in this proceeding was filed by Voice of San Diego against the County on July 29, 2020. The petition alleged that on April 10, 2020, Voice of San Diego sent a request under the PRA to the County, which sought "[a]ny and all copies of epidemiological reports sent to the state of California showing the results of San Diego County's investigative contact tracing efforts since Jan. 1, 2020, to present." The County denied the request on the same day, with the following explanation: "County staff is focused on providing essential services to County residents for the foreseeable future. Due to this ongoing emergency, staff that may have responsive records do not have the capacity to search for records responsive to your request. Under California Government Code section 6255[, subdivision ](a) the public interest in

receiving records at this time is outweighed by public interest in having County personnel free to handle this ongoing emergency. We do not anticipate responding to your request until the emergency order has been lifted." The County also provided Voice of San Diego with a link to the website where the County provided the public with updates regarding the COVID-19 pandemic. Voice of San Diego sought a writ of mandate, a preliminary and permanent injunction and declaratory relief, all of which were directed at obtaining an order requiring the County to produce the records requested on April 10, 2020.

On September 10, 2020, an amended petition for writ of mandate and complaint was filed, which added KPBS as a petitioner. The amended petition alleged that on July 15, 2020, KPBS submitted a request to the County under the PRA, which sought records showing "[t]he location of all businesses or other entities where COVID-19 community outbreaks have occurred in San Diego County from March 1, 2020 through July 15, 2020," along with "the date (or date range) of each outbreak and how many cases were identified in each outbreak." On July 17, 2020, the County denied KPBS's request with the following explanation:

> "The County will only identify a specific location if there is an ongoing risk to public health. For example, in the past there has been instances of e-coli contamination and cases of Tuberculosis where public health was threatened and the health officer identified the specific location. In the instance of COVID-19 outbreaks, none have been determined to be an ongoing threat to the public health.

> "Another consideration is we don't want businesses and others to be reluctant to come forward to report. If businesses are called out in a manner that they feel is punitive, other businesses are less likely to be upfront about concerns related to potential outbreaks in the future, thereby impacting both the

4

ability to trace and efforts to combat COVID and other infectious diseases.

"Moreover, while State licensing agencies have been able to provide this specific type of data, the County's Public Health Officer is not able to do so. Information publicly disclosed by the Public Health Officer regarding communicable disease investigations must be de-identified to prevent it from being linked to a particular individual. (Title 17, Section 2502[, subd.] (f)(3) of the California Code of Regulations.) Providing this sort of information has the potential to lead to either the identification of physical residential or work addresses of people who have contracted a disease, which would too closely link the disclosure to particular individuals. Under Government Code section 6254[, subdivision] (k), the Public Health Officer may not provide these addresses in response to a Public Records Act request."

Although the County did not provide location information for the outbreaks, it did provide a list of the outbreaks by sector, separately showing the total number of outbreaks through July 17, 2020, in "Restaurants/Bars"; "Construction/Manufacturing/Retail Businesses/Gym"; "Healthcare Settings"; "Private Residences"; "Church Outreach or Social Club"; "Grocery Store"; "Food Processing Facilities"; "Government Facilities"; "Restaurants"; "Hotel, Resort or Campground"; "Community-Based Organization/Daycare Settings"; and "Hair Salons/Barbershops."

The amended petition also alleged that KPBS had obtained from the City of El Cajon a County-prepared document, dated April 18, 2020, which consisted of a spreadsheet showing the names and locations of businesses experiencing COVID-19 community outbreaks throughout the County, along with the dates of those outbreaks and other related statistics. According to the amended petition, the document obtained from the City of El Cajon confirmed the existence of public records responsive to KPBS's request. The amended petition sought an order requiring the County to release records

5

responsive to the requests of both Voice of San Diego and KPBS pursuant to the PRA.

On September 28, 2020, a second amended petition for writ of mandate and complaint was filed, which added San Diego Union Tribune as a petitioner. The second amended petition alleged that on September 3, 2020, San Diego Union Tribune submitted a request to the County under the PRA, which sought the County's "electronic list of community outbreaks," including the fields that showed the "Name of location where outbreak occurred," the "Address of location where outbreak occurred," the "City where outbreak occurred" and the "ZIP code where outbreak occurred." The County responded to San Diego Union Tribune by explaining that it would release the spreadsheet, but it would redact the name and address information for the location of the outbreaks. An exhibit attached to the second amended petition shows that the County provided the following explanation for the redactions:

> "There is a significant government interest during a pandemic in the candid exchange of information between those linked to these outbreak locations and the Public Health Officer's disease investigators. Contact tracing only works when those that are being interviewed are completely honest and forthcoming with relevant information. The Department of Public Health's investigators assure those they interview that the information they provide will be kept confidential. Many people investigators speak with are fearful that providing the name of the location where they were potentially infected could have negative effects on that location whether it be a church, a restaurant or a place of business. Additionally, it has the potential to reveal the diagnosis of particular individuals if disclosed. Releasing the names of these locations and the addresses will have a chilling effect on the open communication necessary to ensure the Public Health Officer is able to effectively combat active outbreaks.

6

"The Public Health Officer must also take measures to protect the medical privacy of those with a communicable disease diagnosis. Specifically, care must be taken to avoid linking a diagnosis to a specific person, or persons—unless doing so is necessary during an active investigation. Naming specific locations, which in many cases is a workplace, will focus in on a potentially small pool of particular individuals. In the field of health privacy, publicly revealing that level of detail is too close of a link to the medical information of specific individuals.

"The Public Health Officer has released certain communicable disease outbreak locations on occasions where a determination has been made that doing so is necessary to prevent the spread of a disease or occurrence of additional cases. For outbreak locations subject to this request, it has been determined that the public release of specific locations is *not* necessary to prevent the spread of COVID-19, or the occurrence of additional cases. In most instances, the outbreak location information is reported and added to this list well after the outbreak has already taken place, so releasing the names now would do little to protect the public, especially when the business is cooperating with the Public Health Officer, exposed individuals have been notified, and measures have been taken to mitigate the risk of an additional outbreak.

"The Public Health Officer has made a determination to release the additional information in this redacted report to benefit the public['s] understanding of disease patterns, and to communicate new knowledge about COVID-19 to the community. However, the redacted information consisting of names and addresses of locations will too closely link this information to specific individuals. In addition, for the reasons stated above, the public interest in not disclosing the specific outbreak locations clearly outweighs the public's interest in releasing this information."

The second amended petition sought an order requiring the County to release records responsive to the requests of all three petitioners pursuant to the PRA.

On September 28, 2020, petitioners filed an opening brief in support of the relief sought in their second amended petition for writ of mandate and complaint.

Petitioners' opening brief set forth two main arguments. The first argument focused on the County's denial of Voice of San Diego's April 2020 request for "[a]ny and all copies of epidemiological reports sent to the state of California showing the results of San Diego County's investigative contact tracing efforts since Jan. 1, 2020, to present." Petitioners argued that the County improperly denied this request, made during the early stages of the pandemic, based on its lack of sufficient staffing capacity to search for records during an emergency. The opening brief asked the trial court "to declare that the County has deceived the public by posing a false justification for its refusal to provide public records under the [PRA] to [Voice of San Diego], and to order the County produce the records responsive to the request as posed without further delay." (Capitalization omitted.)

The opening brief's second argument focused on a redacted spreadsheet that the County released to KPBS and San Diego Union Tribune in response to their PRA requests. Specifically, on September 3, 2020, the County released a 16-page spreadsheet containing information about outbreaks of COVID-19 in San Diego County (the Confirmed Outbreaks Spreadsheet). The 16-page document set forth information for COVID-19 outbreaks through August 31, 2020, in three separate tables, i.e., for skilled nursing facilities, non-skilled congregate living facilities, and community settings.[2]

---

[2] As the notes to the Confirmed Outbreaks Spreadsheet explain, the definition of an "outbreak" differs depending on the context. For skilled nursing facilities, an outbreak is defined as "at least one case of laboratory-confirmed COVID-19 in a resident." For non-skilled congregate living

8

Unredacted columns in all three of the tables showed the cities where each outbreak occurred; the total number of cases in the outbreak; the number of deaths resulting from the outbreak; the onset date of the outbreak; the date the outbreak was confirmed; whether the outbreak was still active and if not, when it became inactive; lab confirmed cases in the last 14 days; and whether the outbreak was in an unincorporated area. The tables for the skilled nursing facilities and non-skilled congregate living facilities also separated the number of COVID-19 cases between residents and staff. The table setting forth outbreaks in community settings had a column indicating the community sector in which each outbreak occurred. The sectors included "Restaurant/Bar"; "Grocery"; "Healthcare"; "Business"; "Gym"; "Business (Manufacturing)"; "Food Processing"; "Hotel/Resort/Spa"; "Salon"; "Residence"; "Faith-based agency"; "Government"; "Business (Construction)"; "Higher Education"; "Preschool"; "Business (Retailer)"; "Adult Daycare"; "Social Club"; and "Community-based organization."

Three columns were redacted on all three of the tables, namely the columns labeled "Location," "Location Address," and "Outbreak Number *Internal Tracking Number." In addition, for the tables relating to skilled nursing facilities and non-skilled congregate living facilities, the column

---

facilities, an outbreak is defined as "at least one case of laboratory-confirmed COVID-19 in the setting of ≥2 cases of acute illness compatible with COVID-19 in residents or staff members of residential congregate settings with onset within a 14-day period." For community settings, an outbreak is defined as "three or more laboratory-confirmed COVID-19 cases in different households in a cluster of 2 or more acute illnesses compatible with COVID-19 with onset within a 14-day period."

showing the number of "Licensed Beds" was redacted.[3]  Petitioners' opening brief argued that the County had not identified any meritorious grounds for redacting the information from the Confirmed Outbreaks Spreadsheet.

After petitioners filed their opening brief, the parties entered into a stipulation, which narrowed the issues to be adjudicated by the trial court. "For the purpose of focusing and narrowing the substantive issues in dispute in this lawsuit, all parties agree that Petitioners are requesting: (1) injunctive relief that the Court order the County to produce only the Confirmed Outbreaks Spreadsheets with the two columns under the headings 'Location' and 'Location Address' unredacted, and (2) declaratory relief with respect to the public's right to such information from [the County] under the [PRA]."  Thus, pursuant to the terms of the stipulation, the parties removed from contention the first issue discussed in petitioners' opening brief, namely, whether the County improperly denied Voice of San Diego's April 2020 request for copies of epidemiological reports on the ground that the ongoing emergency situation caused by the pandemic did not afford the County sufficient staffing capacity to search for records.

After the parties entered into the stipulation, the County filed its opposition, setting forth its reasons for redacting the "Location" and "Location Address" columns in the Confirmed Outbreaks Spreadsheet.  The County argued that the information was properly withheld on two independent legal bases:  (1) section 6254, subdivision (k), which allows a public agency to withhold "[r]ecords, the disclosure of which is exempted or

---

[3]     In its communication with KPBS, the County provided the identical multi-paragraph explanation for the redactions in the Confirmed Outbreaks Spreadsheet as it provided in responding to the PRA request from San Diego Union Tribune, which we have quoted above.

prohibited pursuant to federal or state law" (§ 6254, subd. (k)); and (2) the catchall exemption of section 6255, subdivision (a), under which a public agency may withhold a public record when it proves that "the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record" (§ 6255, subd. (a)). In support of its opposition, the County submitted, among other things, the declaration of Dr. Wilma Wooten, who has been the County's Public Health Officer since 2007. Among her qualifications, Dr. Wooten is a medical doctor and has a master's degree in public health.[4]

In support of the County's contention that the redacted information in the Confirmed Outbreaks Spreadsheet is exempted from disclosure pursuant to state law, Dr. Wooten explained that the County is "required to prepare and send to the state individual case and outbreak reports detailing COVID-19 data pursuant to [California Code of Regulations, title 17, section 2502]."

---

[4] Dr. Wooten fully set forth her qualifications as follows: "I am trained in Family Medicine and have a master's degree in public health from the University of North Carolina at Chapel Hill. I performed my residency training at the Georgetown/Providence Hospital Family Practice Residency Program in Washington, D.C. I practiced medicine as a faculty member in the UCSD Department of Family and Preventive Medicine for the first 11 years of my 31 years in San Diego, and I am still a volunteer Associate Clinical Professor in the UCSD Department of Family and Preventive Medicine and an Adjunct Professor at San Diego State University, Graduate School of Public Health. In February 2007, I was appointed as the Public Health Officer for the County. I am also a County appointee to the HIV Community Planning Prevention Board, a commissioner of the First 5 Commission of San Diego, a member of the California Conference of Local Health Officials and the Health Officers Association of California, and a member of the Public Health Accreditation Board and the Big Cities Health Coalition. I have worked for the County of San Diego for over 19 years, serving the first six as Deputy Health Officer, and have served as the Public Health Officer for the past 13 years."

11

According to Dr. Wooten, "All information contained in the [Confirmed Outbreaks Spreadsheet] is also contained in or derived from the individual case or outbreak reports prepared by the Public Health Officer and sent to the State Department of Public Health" and is "the County's internal document summarizing the information contained in those case and outbreak reports." Therefore, as Dr. Wooten explained, she considers the information in the Confirmed Outbreaks Spreadsheet, like the individual case and outbreak reports, to be confidential pursuant to California Code of Regulations, title 17, section 2502, subdivision (f). That provision states, "Information reported pursuant to this section [i.e., section 2502] is acquired in confidence and shall not be disclosed by the local health officer except as authorized by these regulations, as required by state or federal law, or with the written consent of the individual to whom the information pertains or to the legal representative of that individual." (Cal. Code Regs., tit. 17, § 2502, subd. (f).)

As Dr. Wooten further pointed out, California Code of Regulations, title 17, section 2502, subdivision (f)(3), states that "[a] health officer *may* disclose any information contained in an individual case report to any person or entity *if* the disclosure may occur without linking the information disclosed to the individual to whom it pertains, and the purpose of the disclosure is to increase understanding of disease patterns, to develop prevention and control programs, to communicate new knowledge about a disease to the community, or for research." (Italics added.) Dr. Wooten explained that she exercised her discretion to disclose the *unredacted* information in the Confirmed Outbreaks Spreadsheet pursuant to this provision even though it was confidential information reported pursuant to California Code of Regulations, title 17, section 2502. However, she decided to *redact* the "Location" and "Location

12

Address" for the outbreaks because she did not believe that information could be disclosed without linking to individuals who tested positive for COVID-19.

Next, Dr. Wooten explained the basis for the County's contention that, under the PRA's catchall exemption, "the public interest served by not disclosing" the "Location" and "Location Address" information appearing in the Confirmed Outbreaks Spreadsheet "clearly outweighs the public interest served by disclosure of the record." (§ 6255, subd. (a).) On this subject, Dr. Wooten adopted and incorporated by reference a "Commentary" piece published in the San Diego Union Tribune on August 21, 2020, which she authored, along with the County's Chief Medical Officer and the County's Medical Director, explaining why the County does not report specific COVID-19 outbreak locations. As Dr. Wooten and her coauthors stated, "Contact tracing and case investigation form a major pillar of our fight against COVID-19, and we're very concerned releasing outbreak locations could impede those efforts. Investigation and tracing require a high level of trust between investigator/tracer and the member of the public being interviewed to help paint a complete picture of the movement of infection between individuals and places. Individuals and businesses who fear—reasonably or otherwise—that information they provide will be made public are considerably less likely to provide the very vital details that identify and mitigate outbreaks." As the authors further explained, "If releasing names and addresses would protect public health, we would wholeheartedly do so. Instead, we believe doing so could hurt both our efforts, and needlessly lead to the identification of individuals who became ill. There is no meaningful action the public could take with such specific information. It may satisfy curiosity, but risks unfairly stigmatizing both locations and individuals linked to outbreak sites."

13

Dr. Wooten's declaration also pointed out that the public would not be better equipped to avoid contracting COVID-19 if the County disclosed the specific location of outbreaks. Presumably referring to outbreaks in community settings, Dr. Wooten stated, "There is no correlation between the location of an Outbreak and the risk of later catching the virus at that same location. An 'Outbreak' does not mean individuals contracted the virus at that Outbreak location; it means only that three or more individuals, from different households, all tested positive for COVID-19 and visited or worked in that location during a certain window of time. If a particular Outbreak location was an unacceptable health risk to the public, the County Health Officer would close the location down." Dr. Wooten further explained that although the Confirmed Outbreaks Spreadsheet contains numerous outbreaks that are identified as still being active, "[t]he term 'active' as used by the County to document COVID-19 outbreaks is a clinical term. It has nothing to do with whether there is an ongoing infectious threat at an outbreak site. There is no correlation between an 'active' outbreak and risk of 'contagion' at the location of that outbreak. An active outbreak means only that someone has had an illness onset at the outbreak site within the last 14 days."

Similarly, in the "Commentary" piece appearing in the San Diego Union Tribune, Dr. Wooten and her coauthors pointed out that although members of the public are not provided with the specific location of outbreaks, they are informed about the type of community setting where outbreaks have occurred, and the public can use that information to avoid the type of places where they may contract COVID-19. "Daily, the count identifies the types of locations that experienced outbreaks, which helps inform people about the types of places they visit." Moreover, as the authors

14

explained, "Collectively, our community outbreaks represent just 4.2% of the positive cases.  Knowing the location of where individuals were known to have had COVID-19 will not keep you safe at a time when the virus is everywhere."[5]

After receiving the parties' briefing, the trial court held a hearing, took the matter under submission, and requested supplemental briefing.  On November 19, 2020, after receiving the supplemental briefs, the trial court denied the petition, relying on both of the independent grounds cited by the County in its opposition.

Specifically, the trial court first decided that the redacted "Location" and "Location Address" information was exempt from disclosure under section 6254, subdivision (k) of the PRA because it was made confidential pursuant to California Code of Regulations, title 17, section 2502, subdivision (f.  Second, as an independent ground for denying the petition, the trial court decided that under the catchall exemption in section 6255, subdivision (a),

_____

[5]     Dr. Wooten's declaration also states that "Los Angeles is the only major jurisdiction that reports outbreak locations; like San Diego County, all other major jurisdictions keep that information confidential.  For example, San Francisco, Chicago and New York City all keep the locations of COVID-19 outbreaks confidential."  Petitioners submitted no evidence to dispute Dr. Wooten's statement.  We note that the amicus brief filed by the Reporters Committee for Freedom of the Press and 18 media organizations identifies certain other jurisdictions throughout the country that have or had the policy of disclosing location information, at least with respect to certain types of COVID-19 outbreaks.  The County, in its response to the amicus brief, takes issues with some of those factual assertions, including whether the jurisdictions continue to follow that approach.  We do not attempt to resolve the issue of which jurisdictions around the country currently release location information for outbreaks.  Our resolution of petitioners' writ petition does not turn on whether Dr. Wooten was correct in stating that Los Angeles County is the only major jurisdiction that reports outbreak locations.

15

the County had met its burden to prove that the public interest in nondisclosure clearly outweighed the public interest in disclosure. Among other things, the trial court pointed out that Dr. Wooten's declaration was uncontradicted in establishing that "revealing outbreak location information is likely to inhibit business owners and other individuals from being forthcoming when reporting outbreaks and responding to contact tracing information requests." Further, the trial court noted that "it is undisputed that Dr. Wooten is an expert in the field of public health, and more specifically combating a communitywide outbreak of a contagious disease."[6]

On January 4, 2021, petitioners filed a petition for extraordinary writ in this court to obtain review of the trial court's denial of their petition. (See § 6259, subd. (c) ["an order of the court, either directing disclosure by a public

_____

[6]    In its ruling, the trial court noted that "the parties entered into a written stipulation affirming the only information sought in this lawsuit is the location information redacted from the spreadsheet." Accordingly, the trial court did not address petitioners' allegation that the County violated the PRA when it responded to Voice of San Diego's April 10, 2020 request for records by stating that, due to the pandemic, it did not have sufficient staffing resources to respond and did not expect to respond until the lifting of the emergency order issued due to the pandemic.

On appeal, petitioners contend that the trial court erred by not resolving the issue of whether the County improperly failed to release the documents requested by Voice of San Diego on April 10, 2020. We disagree. Based on the plain language of the parties' stipulation, the trial court did not err in declining to adjudicate that issue, as it was no longer within the scope of the issues in dispute. Specifically, the parties stipulated in the trial court that the issues in dispute would be narrowed to petitioners' request for "(1) injunctive relief that the Court order the County to produce only the Confirmed Outbreaks Spreadsheets with the two columns under the headings 'Location' and 'Location Address' unredacted, and (2) declaratory relief with respect to the public's right to *such information* from [the County] under the [PRA]." (Italics added.)

16

official or supporting the decision of the public official refusing disclosure, is not a final judgment or order within the meaning of Section 904.1 of the Code of Civil Procedure from which an appeal may be taken, but shall be immediately reviewable by petition to the appellate court for the issuance of an extraordinary writ"].)[7]

On January 14, 2021, we issued an order summarily denying the petition.[8]  Petitioners filed a petition for review, which our Supreme Court granted on March 25, 2021.  The order granting review transferred the matter to us with directions to issue an order to show cause why the relief

---

[7]     Section 6259, subdivision (c) provides that to obtain review, a party shall "file a petition within 20 days after service upon the party of a written notice of entry of the order, or within such further time not exceeding an additional 20 days as the trial court may for good cause allow."  Here, the trial court approved the parties' stipulation that petitioners would have an additional 20 days to file a petition seeking appellate review.  The County points out that on December 21, 2020, during the 20-day extension period, KPBS published information from an unredacted version of the Confirmed Outbreaks Spreadsheet, disclosing the specific locations of outbreaks since the beginning of the pandemic.  San Diego Union Tribune then also published the information first released by KPBS.  The record contains no information about how KPBS obtained the information.  As the County explains, it learned that KPBS had the unredacted information and unsuccessfully asked KPBS on December 16, 2020, to refrain from publishing it.  We note that the publication of the unredacted outbreak information does not render the instant matter moot, as outbreak data for subsequent time periods continued to develop and the County continued to make redactions.  Although the County argues that we should take account of petitioners' release of the information in deciding whether extraordinary writ relief is warranted, that fact plays no part in our decision.

[8]     In the order summarily denying the petition, we granted petitioners' request for judicial notice.

17

sought in the writ petition should not be granted.  We issued such an order, received briefing, and held oral argument.[9]

## II.

## DISCUSSION

A.    *Overview of the PRA*

We begin with an overview of the PRA.  "The PRA and the California Constitution provide the public with a broad right of access to government information. . . .  The PRA, enacted in 1968, grants access to public records held by state and local agencies.  (§ 6250 et seq.)  Modeled after the federal Freedom of Information Act (5 U.S.C. § 552 et seq.), the PRA was enacted for the purpose of increasing freedom of information by giving members of the public access to records in the possession of state and local agencies. . . . Consistent with the Legislature's purpose, the PRA broadly defines 'public records' to include 'any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics.'  (§ 6252, subd. (e).)"  (*Los Angeles County Bd. of Supervisors v. Superior Court* (2016) 2 Cal.5th 282, 290 (*Los Angeles County Bd. of Supervisors*), citations omitted.)

"As the result of a 2004 initiative, Proposition 59, voters enshrined the PRA's right of access to information in the state Constitution . . .  (Cal. Const., art. I, § 3, subd. (b)(1).)"  (*Los Angeles County Bd. of Supervisors*, *supra*, 2 Cal.5th at pp. 290-291.)  As amended by the initiative, the Constitution directs that "[a] statute, court rule, or other authority, including those in effect on the effective date of this subdivision, shall be broadly

---

9    In connection with its April 26, 2021 return to the petition, the County filed an unopposed motion requesting that we take judicial notice of certain relevant documents.  We hereby grant the request.

18

construed if it furthers the people's right of access, and narrowly construed if it limits the right of access." (Cal. Const., art. I, § 3, subd. (b)(2).) " ' "Given the strong public policy of the people's right to information concerning the people's business (. . . § 6250), and the constitutional mandate to construe statutes limiting the right of access narrowly (Cal. Const., art. I, § 3, subd. (b)(2)), 'all public records are subject to disclosure unless the Legislature has *expressly* provided to the contrary.' " ' " (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 617.)

"Despite the value assigned to robust public disclosure of government records both in the California Constitution and in the PRA, two statutory exceptions nonetheless exist. The first is section 6255[, subdivision ](a), the PRA's catchall provision allowing a government agency to withhold a public record if it can demonstrate that 'on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record.' In determining the propriety of an agency's reliance on the catchall provision to withhold public records, the burden of proof is on the agency 'to demonstrate a clear overbalance' in favor of nondisclosure. [Citation.] The second is section 6254, which lists certain categories of records exempt from PRA disclosure. These exemptions are largely concerned with protecting ' "the privacy of persons whose data or documents come into governmental possession." ' " (*Los Angeles County Bd. of Supervisors*, *supra*, 2 Cal.5th at p. 291.)

In redacting the Confirmed Outbreaks Spreadsheet, the County relied both on the catchall exemption in section 6255, subdivision (a), and on the specific exemption providing a public agency the right to withhold "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to

19

privilege." (§ 6254, subd. (k).) The trial court concluded that both of the statutory grounds identified by the County had merit.

We proceed by first considering the catchall exemption. Because, as we will explain, we conclude that the County has met its burden to prove that it is justified under the catchall exemption to redact "Location" and "Location Address" information from the Confirmed Outbreaks Spreadsheet, we need not, and do not, consider whether the redactions would also be justified under section 6254, subdivision (k).

B.    *The County Was Justified in Redacting the Location and Location Address Information From the Confirmed Outbreaks Spreadsheet Under the PRA's Catchall Exemption*

"Section 6255[, subdivision ](a)—[PRA's] catchall provision . . . — permits an agency to withhold a public record if the agency demonstrates 'that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record.' (§ 6255[, subd. ](a).) . . . This 'provision contemplates a case-by-case balancing process, with the burden of proof on the proponent of nondisclosure to demonstrate a clear overbalance on the side of confidentiality.' . . . Whether such an overbalance exists may depend on a wide variety of considerations, including privacy . . . ; public safety . . . ; and the 'expense and inconvenience involved in segregating nonexempt from exempt information.' . . . In balancing the interests for and against disclosure, we review the public interest factors de novo but accept the trial court's factual findings as long as substantial evidence supports them." (*American Civil Liberties Union Foundation v. Superior Court* (2017) 3 Cal.5th 1032, 1043, citations omitted.) "As the party seeking to withhold the record, the County bears the burden of justifying nondisclosure." (*County of*

*Santa Clara v. Superior Court* (2009) 170 Cal.App.4th 1301, 1329 (*County of Santa Clara*).)

  1.  *The Public Interest in Redacting the Information*

  The County relies on Dr. Wooten's declaration to establish the public interest served by redacting the "Location" or "Location Address" information from the Community Outbreaks Spreadsheet. The County argues, "As Dr. Wooten explains, publication of location information would undermine the County's public health response. Specifically, 'investigation and tracing require a high level of trust between investigator/tracer and the member of the public being interviewed.' "

  As we have detailed, Dr. Wooten's declaration incorporates the "Commentary" piece published in the San Diego Union Tribune in which she and her coauthors explain the reason for withholding the location of outbreaks. "Contact tracing and case investigation form a major pillar of our fight against COVID-19, and we're very concerned releasing outbreak locations could impede those efforts. Investigation and tracing require a high level of trust between investigator/tracer and the member of the public being interviewed to help paint a complete picture of the movement of infection between individuals and places. Individuals and businesses who fear— reasonably or otherwise—that information they provide will be made public are considerably less likely to provide the very vital details that identify and mitigate outbreaks."

  The County also identified the public interest in advancing effective contact tracing when explaining to both KPBS and San Diego Union Tribune why it was redacting information about the outbreak locations. As the County explained, "There is a significant government interest during a pandemic in the candid exchange of information between those linked to

21

these outbreak locations and the Public Health Officer's disease investigators.  Contact tracing only works when those that are being interviewed are completely honest and forthcoming with relevant information.  The Department of Public Health's investigators assure those they interview that the information they provide will be kept confidential.  Many people investigators speak with are fearful that providing the name of the location where they were potentially infected could have negative effects on that location whether it be a church, a restaurant or a place of business.  Additionally, it has the potential to reveal the diagnosis of particular individuals if disclosed.  Releasing the names of these locations and the addresses will have a chilling effect on the open communication necessary to ensure the Public Health Officer is able to effectively combat active outbreaks."

In short, according to the County, the redaction of "Location" and "Location Address" information advances a major pillar in the County's fight against COVID-19 by promoting the trust and candid cooperation from the public that is needed to ensure effective contact tracing.[10]

---

[10]    The concept of contact tracing has become familiar to the public during the COVID-19 pandemic.  As stated on the State of California's website pertaining to COVID-19, "Contact tracing is a public health practice that health departments use to identify and notify people who have been exposed to someone with an infectious disease.  Public health workers reach out to these exposed people to tell them that they've been in close contact with an infected person and to give them information and support to help them keep themselves and their loved ones safe."  (See <https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19-Contact-Tracing.aspx#what-contact-tracing-is> [as of July 16, 2021], archived at <https://perma.cc/367Q-SMBM>.)  As explained by the Centers for Disease Control and Prevention website:

"Contact tracing has been used for decades by state and local

22

Petitioners do not dispute Dr. Wooten's expertise, and they submit no evidence to contradict her expert opinion that the withholding of outbreak location information advances the County's efforts in combating the COVID-19 pandemic.  Instead, petitioners contend that Dr. Wooten's opinion is "solely supported by conjecture."  According to petitioners, "the County offers neither statistical data to show the linkage between outbreak disclosure and contact tracing, nor is there any scholarly work to indicate a basis for such an opinion, even if provided by an expert."  (Capitalization omitted.)  Petitioners contend that the County's position is based on "speculative concerns, fears and worries over the possible effect of disclosure."  As we will explain, we reject the argument.

Petitioners correctly point out that the trial court would have been entitled to discount the weight of Dr. Wooten's expert opinion about effective contact tracing methodology if it determined that her opinion was unduly speculative or without a proper basis.  (See, e.g., *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 771-772) ["the trial court acts as a gatekeeper to exclude expert opinion testimony that is (1) based on matter of a type on which an expert may not reasonably rely,

<hr>

health departments to slow or stop the spread of infectious diseases.  [¶]  Contact tracing slows the spread of COVID-19 by
- Letting people know they may have been exposed to COVID-19 and should monitor their health for signs and symptoms of COVID-19.
- Helping people who may have been exposed to COVID-19 get tested.
- Asking people to self-isolate if they have COVID-19 or self-quarantine if they are a close contact of someone with COVID-19." (See <https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Contact-Tracing> [as of July 16, 2021], archived at <https://perma.cc/ZD68-PNE3>.)

(2) based on reasons unsupported by the material on which the expert relies, or (3) speculative"]; *In re Scott* (2003) 29 Cal.4th 783, 823 ["Although experts may testify about their opinions, the fact finder decides what weight to give those opinions. This is especially important when the witnesses are not neutral court-appointed experts . . . ."].) Here, however, the trial court did not find Dr. Wooten's opinion to be unduly speculative or to lack credibility or foundation. Instead, as the trial court explained, it was crediting Dr. Wooten's opinion because "it is undisputed that Dr. Wooten is an expert in the field of public health, and more specifically combating a communitywide outbreak of a contagious disease." We reach the same conclusion as the trial court. Dr. Wooten's opinion is entitled to weight based on her expertise as a public health official, and, as we will explain, petitioners present no reason for us to conclude otherwise.

In arguing that Dr. Wooten's opinion is not entitled to weight, petitioners focus on Dr. Wooten's discussion of Los Angeles County's decision to release information about location outbreaks. Dr. Wooten states, "Based on the contact tracing data reported on its website, Los Angeles County makes about 0.7 contacts per case investigation. The [County of San Diego's] rate of contacts per investigation is 2.7, almost 4 times higher which greatly helps [it] keep a low test-positive rate – a rate much lower than Los Angeles County's rate. I believe the fact that Los Angeles discloses the specific locations of Outbreaks is a reason why that county has low contact tracing numbers." Petitioners point out that there are other significant differences between Los Angeles and San Diego counties that may explain the difference in contact tracing outcomes, such as population size, and they speculate that Los Angeles County may have devoted less resources to contact tracing.

24

Accordingly, petitioners contend that "Dr. Wooten's claims are of limited, if any, weight."

However, based on our independent review of the record, petitioners place undue emphasis on Dr. Wooten's discussion of Los Angeles County's experience with contact tracing in attacking the totality of her expert opinion. When read in the context of the arguments made in the trial court, it is evident that Dr. Wooten was *not* claiming to have relied on the contact tracing outcomes in Los Angeles County in formulating her opinion that San Diego County should withhold information about outbreak locations. Instead, Dr. Wooten's declaration was submitted *after* petitioners submitted their opening brief, and Dr. Wooten specifically discussed Los Angeles County in *responding* to an argument made by petitioners. In attacking the County's concern that publicly releasing information about the location of COVID-19 outbreaks would harm contact tracing efforts, petitioners' opening brief argued that "there is actual evidence to the contrary indicating that no such imagined harm will arise, and that the County merely conjures up worst-case scenarios to avoid disclosure." Specifically, petitioners pointed out that "[t]he County of Los Angeles has, and continues to presently, disclose specific location data as to community outbreaks and infections within its jurisdiction without quantifiable detriment." As we read Dr. Wooten's declaration, the discussion of Los Angeles County is included to respond to this specific argument made by petitioners. However, Dr. Wooten's expert opinion that effective contact tracing requires that outbreak location information be kept confidential is based on her long history of training and experience as a public health professional, not on her recent observations of contact tracing efforts in Los Angeles County.

In contending that we should not give weight to Dr. Wooten's opinion, petitioners also rely on case law holding that vague or speculative assertions of harm or adverse consequences are not sufficient to justify a public agency's decision to withhold public records under the PRA's catchall exemption. Those cases all follow the principle articulated in *CBS, Inc. v. Block* (1986) 42 Cal.3d 646, at page 652 (*CBS*), that "[a] mere assertion of *possible endangerment* does not 'clearly outweigh' the public interest in access to . . . records" (italics added). The cases arise in a variety of circumstances. (*Ibid.* [a sheriff withheld records of concealed weapon applications and licenses, stating that "releasing this information will allow would-be attackers to more carefully plan their crime against licensees and will deter those who need a license from making an application," but this concern was "conjectural at best," and constituted nothing more than "[a] mere assertion of possible endangerment"]; *Long Beach Police Officers Assn. v. City of Long Beach* (2014) 59 Cal.4th 59, 75 [rejecting the city's blanket refusal to release the names of police officers involved in on-duty shootings because a lieutenant's declaration that public disclosure *could* expose an officer and the officer's family to harassment or retaliatory violence was too vague and speculative when the city offered " 'no evidence' of a 'specific safety concern regarding any particular officer' "]; *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 301-302 [when a public commission withheld records showing peace officers' names and employment information, with the explanation "that in light of the 'dangerous and demanding work' performed by peace officers, releasing such information to the public creates a 'potential for mischief,' " the court held that the blanket refusal to release the records was improper because the "contention that peace officers *in general* would be threatened by the release of the

26

information in question is purely speculative"]; *California State University v. Superior Court* (2001) 90 Cal.App.4th 810, 835 (*California State University*) [a state university could not refuse to disclose the identities of anonymous private donors who obtained access to luxury suites in a newly constructed arena on campus by claiming, without evidence, that disclosure would likely lead to the loss of present and future donations because those "unsupported statements constitute nothing more than speculative, self-serving opinions" unconnected to any "admissible evidence in the record that any license agreements will be canceled if licensee names are disclosed to the public"]; *New York Times Co. v. Superior Court* (1990) 218 Cal.App.3d 1579, 1585-1586 (*New York Times*) [when a water district withheld records showing the names of customers who used excessive water because "publication of those names could expose the individuals to verbal or physical harassment due to the strong currents of emotion on the subject of water overuse," the court rejected that argument, explaining that "the record contains no evidence that revelation of names and addresses of those who have exceeded their water allocation during a billing period will subject those individuals to infamy, opprobrium, or physical assault" and thus the district's concerns were "speculative"].)

The cases that petitioners cite do not convince us that we should not give weight to Dr. Wooten's opinion in deciding whether the public interest in redacting the "Location" and "Location Address" information clearly outweighs the public interest in disclosure. Unlike the speculative and vague prospect of adverse consequences in the cases that petitioners cite, the dangers to the public from the spread of disease during the COVID-19 pandemic are *real and concrete*. In the face of the real public health crisis caused by the COVID-19 pandemic, petitioners do not dispute that the ability

27

to conduct effective contact tracing is a major pillar in the fight against the spread of the disease. The record contains the uncontradicted opinion of Dr. Wooten that promoting trust between members of the public and contact tracers is crucial if the public is to candidly and fully cooperate in contact tracing. Thus, Dr. Wooten's expert opinion in the field of public health regarding the best way to fight a pandemic is nothing like the vague and inexpert opinions offered by the public agencies to support the speculative harms alleged in the case law cited by petitioners.[11]

---

[11] In distinguishing the cases relied upon by petitioners, we find further support in *Humane Society of U.S. v. Superior Court* (2013) 214 Cal.App.4th 1233. In that case, the issue was whether a public university was justified in denying a request under the PRA for communications that took place during the research for an academic study. (*Id*. at pp. 1238-1247.) In support of its decision to withhold the communications, the university relied on the declaration of a professor who directed and coauthored the academic study. (*Id*. at pp. 1240-1244.) Among other things, the professor opined that "disclosure of communications would fundamentally impair the academic research process" and would cause people to be "less forthcoming with data and frank opinions." (*Id*. at p. 1258.) Rejecting an argument that the professor's opinions were too speculative to support the university's decision to withhold the communications, the court distinguished three of the cases that petitioners rely upon here: *CBS, supra,* 42 Cal.3d 646, *New York Times, supra,* 218 Cal.App.3d 1579, and *California State University*, *supra*, 90 Cal.App.4th 810. The court explained that unlike in those three cases, "there [was] competent evidence" that harm would result if the university was required to release the communications. (*Id*. at p. 1258.) Just as the County relies on Dr. Wooten's expert declaration to establish the harm that would result if it released the "Location" and "Location Address" information, the university properly relied upon the professor's opinion as competent evidence to support its withholding of the communications, especially in light of the professor's credentials, his 30 years of experience, and the fact that his "expert opinion . . . is grounded in his extensive experience in academic research." (*Ibid*.)

28

As appellate court judges we do not have the expertise to second guess the soundness of Dr. Wooten's opinion, and the record contains no expert opinion that would cause us to question the wisdom of Dr. Wooten's approach. As the Supreme Court has recently observed, as members of the judiciary, we "are not public health experts, and we should respect the judgment of those with special expertise and responsibility in this area." (*Roman Catholic Diocese of Brooklyn v. Cuomo* (2020) \_\_\_U.S. \_\_\_, \_\_\_ [141 S.Ct. 63, 68.]) Applying that approach, we credit Dr. Wooten's opinion and therefore reject petitioners' contention that the County's concerns with releasing the "Location" and "Location Address" information on the Confirmed Outbreaks Spreadsheet is too vague and speculative under the PRA's catchall exemption to clearly outweigh the public interest in disclosure.

Petitioners further argue that Dr. Wooten's opinion that contact tracing would be undermined if the County released the location of COVID-19 outbreaks is not credible because the evidence in the record shows that the County has publicly disclosed location information for certain disease outbreaks, "all without apparent concern of diminished outbreak notifications going forward." Specifically, petitioners point to the County's public disclosure of (1) the name and address of a restaurant at which a hepatitis A outbreak occurred in 2017;[12] (2) a case of tuberculosis at a local high school

___

[12] The County's news release stated that "San Diego County health officials are advising the public that anyone who may have eaten or had beverages at the World Famous restaurant in Pacific Beach on seven specific dates and times that they may have been exposed to a person with the hepatitis A virus." In the release, the County explained, " 'The risk to the public is low, but anyone who ate or had beverages at the restaurant on those dates and times should be aware of the signs and symptoms of hepatitis A.' "

during specific dates in 2020;[13] and (3) the specific number of COVID-19 cases connected to students at San Diego State University. Dr. Wooten's declaration provides further context as to why the County disclosed outbreak locations in those instances.

Having reviewed the relevant documentation, we conclude that the disclosure of outbreak locations in the three instances identified by petitioners does not show that, in the context of the COVID-19 pandemic, the County lacks a genuine concern with "diminished outbreak notifications going forward." The hepatitis A and tuberculous outbreaks are not comparable to the COVID-19 outbreaks because they were limited in scope and did not occur in the context of a widespread pandemic where ongoing contact tracing is a necessary and important pillar in the fight against the disease. Moreover, unlike in the COVID-19 pandemic, as Dr. Wooten explained, release of the outbreak locations was warranted because the public could take specific action based on that information to protect themselves and prevent the spread of disease. As Dr. Wooten stated, "Unlike the . . . hepatitis A incident [and the tuberculosis incident], the public does not need to take any additional protective measures after visiting a site associated with a COVID-19 'outbreak'—such as seeking medical care—because community transmission of COVID-19 is widespread. For COVID-19, the public needs to follow the same protective guidance related to facial coverings, physical distancing, symptom screening, and sanitation regardless of whether they visited a particular location."

[13] The County's news release stated that "[a] person at Morse High School was recently diagnosed with tuberculosis (TB) and may have exposed students and staff" and that public health officials were working with the school district "to notify those who were potentially exposed and provide TB testing."

With respect to the County's public disclosure of the number of students at San Diego State University who contracted COVID-19, because of the size of the university, disclosure that a certain number of students contracted COVID-19 does not pose any risk of revealing confidential information that might discourage the public from participating in future contact tracing efforts. Indeed, the disclosure that a certain number of COVID-19 cases occurred within a large student-body is akin to the County's disclosure that a COVID-19 outbreak occurred in a smaller-sized city within the County.[14] Moreover, as in the case of the hepatitis A and tuberculosis outbreaks, the County had a specific public health rationale for releasing the information about the outbreak occurring at San Diego State University. Specifically, as Dr. Wooten explained, the County disclosed the number of cases that occurred in students "for the purpose of attempting to change student behavior (unmasked socializing) that was causing the outbreaks." In contrast, as Dr. Wooten explained, no public health rationale supports the release of information of the "Location" and "Location Address" of COVID-19 outbreaks in general.

---

[14]    We note that petitioners submitted to the trial court a request that it take judicial notice of a page from the website of San Diego State University stating that the university anticipated "7,000 to 8,200 students to enroll in on-campus courses during the 2020-21 academic year." On our own motion, we take judicial notice that in 2019 the city of Del Mar had a population of 4,331 and the city of Pine Valley had a population of 1,477. (U.S. Census Bureau, <https://data.census.gov/cedsci/profile?g=1600000US0618506> [as of July 16, 2021], archived at <https://perma.cc/X4QY-5KZW>; <https://data.census.gov/cedsci/profile?g=1600000US0657260> [as of July 16, 2021], archived at <https://perma.cc/846X-8FPC>.) Both of those cities are identified as locations of outbreaks in the Confirmed Outbreaks Spreadsheet.

In sum, through the declaration of Dr. Wooten, the County has identified an important public health reason for redacting the "Location" and "Location Address" information in the Confirmed Outbreaks Spreadsheet. Petitioners have not succeeded in their attempts to undermine the weight of that evidence. As the County has established, contact tracing is a major pillar in the fight against the spread of disease in the COVID-19 pandemic, and voluntary and candid public cooperation with contact tracing will occur only if the public is assured that information provided during contact tracing will be kept confidential.

2. *The Public Interest in Obtaining the Redacted Information*

Having considered the important public interest served by the County's redaction of the "Location" and "Location Address" information from the Confirmed Outbreaks Spreadsheet, the next step in our analysis is to consider the countervailing public interest in obtaining that information. Petitioners identify two interests that would be served by disclosure: (1) "the location data offers the public an understanding of the risks involved in frequenting a location known to have one or more outbreaks," and (2) the information would show the public "how its government is performing in combating the ongoing health crisis." We discuss these interests in turn.

We first examine petitioners' contention that members of the public have an interest in the "Location" and "Location Address" information because they can use that information to protect themselves or others from COVID-19. Petitioners' argument relies on the common sense notion that it is best to avoid a location where infection has occurred, and that persons who were at that location would want to know of the location to assess whether they might have been exposed. Although we understand petitioners' argument, the record does not support petitioners' contention that a member

32

of the public can better avoid COVID-19 infection if he or she knows of the particular locations where outbreaks occurred.

As Dr. Wooten stated, "There is *no correlation* between the location of an Outbreak and the risk of later catching the virus at that same location. An 'Outbreak' does not mean individuals contracted the virus at that Outbreak location; it means only that three or more individuals, from different households, all tested positive for COVID-19 and visited or worked in that location during a certain window of time. If a particular Outbreak location was an unacceptable health risk to the public, the County Health Officer would close the location down." (Italics added.) Further, according to Dr. Wooten, "There is *no correlation* between an 'active' outbreak and risk of 'contagion' at the location of that outbreak. An active outbreak means only that someone has had an illness onset at the outbreak site within the last 14 days." (Italics added.) As the "Commentary" piece appearing in the San Diego Union Tribune persuasively points out, community outbreaks represent just 4.2% of the positive cases. Thus, even were the public told about the location of outbreaks, "[k]nowing the location of where individuals were known to have had COVID-19 will not keep you safe at a time when the virus is everywhere."

Significantly too, even with the redacted "Location" and "Location Address" information, the Confirmed Outbreaks Spreadsheet still provides the public with valuable information that might help them avoid infection, as it discloses the community sector in which the outbreak occurred. Access to information that a significant percentage of outbreaks occurred in a "Restaurant/Bar," for instance, allows members of the public to avoid that type of establishment as much as possible to avoid being part of a *future* outbreak.

33

We understand that the public is keenly interested in finding out the exact location where outbreaks have occurred. We can also imagine some exceptional circumstances where a member of the public may avoid spreading disease by knowing that he or she has been in a location where an outbreak was recently confirmed.[15] However, the record establishes that access to the "Location" and "Location Address" information in the Confirmed Outbreaks Spreadsheet would not have meaningful value in helping the public avoid infection with COVID-19.

Second, we consider petitioners' claim that the information about the location of the outbreaks would help assess the efficacy of the government's response to the pandemic. Specifically, petitioners argue that "the public has an intense interest in understanding which government measures are working, and which are not." According to petitioners, "[t]he public's understanding of the County's use of the allocation of the extraordinary sums of money being used is important in a fluid situation such as this ongoing COVID-19 crisis, so that waste, fraud, and ineptitude may be diminished, and the public can better understand what basis government has in curtailing personal freedoms and rights at this time." Petitioners' argument depends on the principle that " ' "[i]f the records sought pertain to the conduct of the people's business there *is* a public interest in disclosure." ' . . . [T]he issue is 'whether disclosure would contribute significantly to public understanding of government activities.' " (*County of Santa Clara, supra,* 170 Cal.App.4th at p. 1324.)

---

[15] For example, someone who had significant interaction with people at the location of a very recently confirmed outbreak, and who has not yet been contacted by contact tracers, might decide to be more cautious in interacting with household members until confirming whether he or she has become asymptomatically infected with COVID-19.

We do not question the public's strong interest in assessing the government's response to the pandemic, including whether the government has effectively used its resources to advance public health and whether restrictions on personal freedom are warranted. Moreover, news media organizations, including petitioners, have indisputably played an important role during the pandemic by obtaining public records so that the public may analyze the government's response. However, petitioners have not explained why access to "Location" and "Location Address" information would significantly improve the public's ability to assess the government's response to the pandemic.

Petitioners contend that it is "*effectively impossible* to corroborate" the "efficacy, efficiency, and cost" of the government's pandemic response without knowing the exact location of each outbreak. (Italics added.) That assertion strikes us as an unwarranted and unsupported exaggeration. Certain hypothetical scenarios may exist in which "Location" and "Location Address" information for COVID-19 outbreaks might contribute to an understanding of whether the government should have taken a different approach to allocating its public health or law enforcement resources. However, petitioners have not identified any scenario in which the public's ability to evaluate the government's response would be significantly improved if it knew the exact address where an outbreak occurred, as opposed to knowing the information that is not redacted from the Confirmed Outbreaks Spreadsheet, including the city, community sector (such as "Restaurant/Bar," "Gym," etc.), date, and number of cases for each outbreak. Therefore, we conclude that disclosure of the redacted "Location" and "Location Address" would not " 'contribute significantly to public understanding of government activities.' " (*County of Santa Clara, supra,* 170 Cal.App.4th at p. 1324.)

35

### 3. *The Public Interest in Redacting the Information Clearly Outweighs the Public Interest in Disclosure*

In sum, having considered and balanced the public interest in redacting the "Location" and "Location Address" information with the public interest in gaining access to that information, we conclude that under the PRA's catchall exemption the County has met its burden to establish that "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." (§ 6255, subd. (a).)

During a deadly pandemic, contact tracing is a major pillar in fighting the spread of disease. The uncontradicted evidence in the record establishes that the redaction of the "Location" and "Location Address" information from the Confirmed Outbreaks Spreadsheet advances the public's voluntary and candid cooperation with contact tracing efforts. Although members of the public understandably are interested in learning the exact location of COVID-19 outbreaks, the disclosure of that information does little to advance either the public's ability to avoid COVID-19 infection or the public's understanding of whether the government is taking appropriate steps to address the pandemic. On the contrary, the County has established that release of the "Location" and "Location Address" information is not in the public interest because it would undermine the County's efforts to fight a pandemic that negatively impacts every member of the public. Accordingly, we deny the petition for extraordinary writ.

36

## DISPOSITION

The petition for extraordinary writ is denied.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.